Syllabus.

---

GEO. W. GLASSCOCK ET AL. v. M. C. HAMILTON.

(Case No. 1746.)

| 62 | 143 |
| 74 | 570 |
| 77 | 646 |
| 62 | 143 |
| 89 | 128 |
| 89 | 129 |
| 89 | 481 |

1. PLEADING — RELEASE.— A release from plaintiff's demand, set up in the answer as a legal result from facts not disclosed therein, is bad on demurrer.

2. PRINCIPAL AND SURETY.— The common law rule is, that, when the surety on a joint obligation dies, there is no remedy at law on the obligation against his estate, and in the absence of fraud or mistake, equity will not charge his estate. The rule is different as to obligations that are joint and several. The common law rule above announced, which relieves the estate of a surety on a joint obligation after his death, had no application in Texas from 1840 up to the adoption of the Revised Statutes.

3. RELEASE — JOINT OBLIGORS.— When the obligation of the sureties is joint and several, the discharge of one of them does not ordinarily release the others from payment of their proper proportion of the claim.

4. CONTRIBUTION BY SURETY.— The right of the surety to enforce contribution from his co-surety consists in the fact that he has paid a debt for which he and his co-surety were bound, that was just and could have been enforced at law against them both; and it is immaterial, if the debt was just, whether suit was pending to enforce it or not. But if the principal be solvent, no contribution can be enforced in favor of a co-surety who voluntarily discharges a judgment that could have been collected from the principal.

5. SEPARATE PROPERTY.— The doctrine again announced, that, when the separate property of the wife has undergone changes by reinvestments, it must be clearly and indisputably traced and identified in its various mutations to maintain its separate character.

6. LIABILITY OF CO-SURETY — LIMITATION.— Though ordinarily there is no liability for contribution to a co-surety who voluntarily pays the debt after it is barred by limitation, yet if he pays it after judgment on a suit begun before limitation has run, such payment, after a period when the bar of the statute would have been complete if the suit had not been brought, will render his co-surety liable for contribution.

7. PLEADING.— See opinion for a plea of the statute of limitations interposed to a claim by a surety against his co-surety, *held* bad on demurrer.

8. CONTRIBUTION BETWEEN CO-SURETIES.— A collateral security taken by a surety from the principal debtor to indemnify such surety against loss inures equally to the protection of his co-sureties.

9. PRINCIPAL AND SURETY — CONTRIBUTION.— A surety on an official bond who secures, in advance, from the principal indemnity, and the means of discharging the obligation, holds it for the joint benefit of his co-sureties; but the fact that such indemnity and means of payment were secured constitutes no defense to a co-surety against paying the debt to the creditor; and if he be compelled to pay the debt, it constitutes no defense to his demand for contribution against the non-paying co-sureties.

10. AMENDMENT.— The right to amend pleadings after exceptions are sustained extends only to curing, by amendment, the pleadings held to be defective, though the court may, in its discretion, extend the privilege to amend other pleadings. Such discretion will not be revised on appeal unless it clearly appears that injury has resulted therefrom.

11. JUDGMENT.— Neither the ancestor, who was a co-surety, nor his heir, can be bound by a judgment against either the principal or co-sureties in a pro-

ceeding to which neither the ancestor nor the heir was a party. But their liability, in a proper case, to co-sureties who had paid more than their proportional share of the debt would exist independent of the judgment.

12. CONTRIBUTION — SURETY.— A compromise judgment was rendered in a United States court in a suit on an official bond, by which it was stipulated that some of the sureties should be discharged from liability on a judgment against their principal on payment by them of $10,000, the judgment against the principal being for over $34,000. It was also stipulated in the judgment that the principal and a co-surety, who was not a party to the proceeding, should be excluded from the benefits of the compromise. The compromise sum of $10,000 was paid by those of the co-sureties embraced in the compromise. In a suit brought by them against the co-surety for contribution, who was not a party, and who, by the terms of the judgment, was excluded from its benefits, *held*, that such co-surety was not liable, either in law or equity.

13. SAME.— In a suit between co-sureties for contribution, unless the plaintiff can show that he has paid a greater portion of the debt than the defendant is liable to pay, he cannot recover.

14. PARTIES.— The technical rule of the common law, that, upon a contract which is joint and several, the plaintiff must sue all or but one, and cannot sue two or more without suing all, has never been recognized in practice in Texas.

APPEAL from Travis. Tried below before the Hon. E. B. Turner.

This was a suit brought by Morgan C. Hamilton, in June, 1875, against appellants as the heirs of Geo. W. Glasscock, Sr., deceased, for contribution.

Appellee in his petition alleged that R. N. Lane was appointed collector of internal revenue for the third district of Texas, on July 24, 1866, and appellees, James H. Raymond, James P. McKinney, James M. Swisher and Geo. W. Glasscock, Sr., signed as sureties on his official bond. That subsequent to the execution of this bond, Geo. W. Glasscock, Sr., died, leaving appellants as his heirs and devisees; that after the death of Geo. W. Glasscock, Sr., on December 27, 1871, the United States instituted suit on this bond of Lane's in the circuit court of the United States, at Austin, against Lane as principal, and all the sureties except Geo. W. Glasscock, Sr., and that in this suit the United States recovered a judgment against Lane as principal, and the other sureties who were parties, for $10,000 and costs of suit. Appellee further alleged that he and James H. Raymond had each paid $3,880.50, and that James P. McKinney had paid $2,687 of the judgment, and that Lane, the principal, and J. M. Swisher, the other surety, were both insolvent; that he, in making his part of the payment, had paid for defendants, as heirs of Geo. W. Glasscock, deceased, $1,293.50, which amount was in excess of the proportion of the judgment for which

he was bound. And in addition to this amount, that he had also paid for obtaining recognition and allowances, in the suit in the United States court, of certain offsets and credits which Lane, the collector, claimed to be entitled to from the United States government; also expense in defending the suit in the United States circuit court, amounting in the aggregate to $1,837.10, which he claimed to have paid out for appellants; that McKinney had refused to pay any part of the expenses in the suit, and that it could not, by law, be made out of him, McKinney; wherefore appellee claimed that appellants were bound for one-third of those expenses.

Appellants appeared and filed a general demurrer and general denial to appellee's petition, and on February 22, 1876, by leave of court, amended their demurrer and answer, excepting specially to the petition, and averred that if any breach of Lane's official bond had ever occurred, that such breach was long after the death of George W. Glasscock, deceased; that Lane, the principal, and Swisher and McKinney, sureties, were solvent, and able to pay the judgment in the United States circuit court; that neither George W. Glasscock, Sr., nor appellants, were ever parties to the suit in the United States circuit court, and were consequently not bound by the judgment in that case; that the judgment in the United States court was not the result of a trial, or rendered on the verdict of a jury, but was upon an agreement between appellee and his other co-sureties and the United States, and without consultation with appellants, and that they never gave their consent to the same; that the same was never paid in whole nor in part by appellee, nor any of the sureties, but by Lane, the principal, through James H. Raymond, one of the sureties on the bond, who had in his hands funds belonging to Lane, more than sufficient to discharge the judgment and costs; that if appellee ever paid any part of the judgment, he paid the same through James H. Raymond, or Raymond & Whitis, agents and bankers. Appellants, by leave of court, amended their demurrer and answer, excepting specially to the petition, and averred that if any breach of Lane's official bond had ever occurred, it was long after the death of George W. Glasscock, deceased; that Lane, the principal, and Swisher and McKinney, sureties, were solvent, and able to pay the judgment in the United States circuit court; that neither George W. Glasscock, Sr., nor appellants, were ever parties to the suit in the United States circuit court, and were consequently not bound by the judgment in that case; that they had government funds in his possession belonging to the principal, Lane, more than sufficient to pay the same; that, nothwithstanding ap-

pellee had full notice of these facts, he made no effort to obtain from Raymond or Lane this money, and never had an execution issued on the judgment, but voluntarily and without compulsion paid (if, indeed, he ever paid) the amount paid on the judgment; that the judgment at that time could have been made out of Lane had execution issued, and that if any one should suffer it should be appellee, by reason of his laches.

Appellants pleaded the statute of limitations of two and four years, and, further, that if George W. Glasscock, deceased, was ever liable on the bond of Lane, that his liability was to the United States government, and such liability had ceased by the running of the statute of limitation; that Raymond was largely indebted to Lane, and, as trustee, had in his hands and possession a large amount of valuable real estate situated in Travis county and the city of Austin, and worth over $40,000, which he held in trust for Lane, and for which he (Raymond) realized $20,000 or over, and never applied the same to the satisfaction of his indebtedness to Lane, nor to the United States; and that appellee had full notice of this before he made any payment on the judgment, and, notwithstanding these facts, voluntarily paid through Raymond whatever amount he paid on the same. Appellants claimed that by reason of the matters alleged in their answer they owed appellee nothing.

Appellee demurred generally and specially to appellants' second amended answer, and denied generally their averments; by amended petition presented an itemized bill of particulars of the several amounts expended by appellee in defending the suit of the United States *v.* Lane *et als.*, and alleged that such expenditures resulted beneficially to appellants. Replying to the amended answer of appellants, that if James H. Raymond ever had in his hands money, collaterals or property of any kind belonging to R. N. Lane, and out of such assets had paid such part of the circuit court judgment as he had paid (of all which appellee disclaimed any information or knowledge), then that such indebtedness from Raymond to Lane was of so long standing as to have been barred by limitation; that Raymond denied that such indebtedness existed; but that, at all events, such assets or debt was not, at the rendition of the judgment in the United States circuit court, available to Lane for the payment of said judgment; that but for the vigorous defense made by appellee to the suit the defendants therein would have been forced to pay $34,000 instead of $10,000, the one-fourth of which must ultimately have been borne by appellants, and that but for the defenses made to that suit by appellee and Raymond, they would have been almost

bankrupted by that suit, and that if Raymond was ever indebted to Lane as charged that he had long since paid said debt.

At the April term, 1877, appellants submitted their demurrer to appellee's petition, which was sustained in so far as appellee had not set out an itemized account in his petition. Appellee's demurrer to appellants' answers was sustained, and the first and second amended answers stricken out, and leave given to amend.

October 23, 1877, verdict for appellee for $1,293.50 principal, and $258.48 interest, on which judgment for $1,552.34 was rendered.

*James H. Burts, Shelley & Moore* and *Carleton & Robertson*, on the sufficiency of the answer, cited: Carroll *v.* Carroll, 20 Tex., 744, 745; Little *v.* Birdwell, 21 Tex., 607; Collins *v.* Box, 40 Tex., 190; State *v.* Purcell, 16 Tex., 305; Schmidt *v.* Coulter, 6 Minn., 492; Morrison *v.* Poynts, 7 Dana (Ky.), 307; Morrison *v.* Taylor, 21 Ala., 779; Smith *v.* Conrad, 15 La. Ann., 579; Elwood *v.* Deifendorf, 5 Barb. (N. Y.), 405; Skillin *v.* Merrill, 16 Mass., 40.

Against the admission of the judgment of the United States court in evidence, they cited: Lucas *v.* The Governor, 6 Ala. (N. S.), 826; Moss *v.* McCulloch, 5 Hill (N. Y.), 134; McKeller *v.* Bowell & Campbell, 4 Hawk. (N. C.), 37; Carmichael *v.* The Governor, 3 How. (Miss.), 236; Maison *v.* Blaisdel, 12 Vt., 170; United States *v.* Eckford, 1 How., 250.

That the judgment should have been for Glasscock, they cited: Pico *v.* Webster, 14 Cal., 202; Jackson *v.* Grierson, 4 Hill (N. Y.), 529; Morrison *v.* Poynts, 7 Dana (Ky.), 387.

*Smith & Blackburn, Hancock, West & North* and *Walton, Green & Hill*, for appellee, on the liability of a co-surety for contribution, cited: Stoval *v.* Banks, 10 Wall., 583; Freeman on Judgments, 180; Love *v.* Gibson, 2 Fla., 598; 1 Par. Con., pp. 35, 36; 10 N. H., 489; 11 N. H., 431; 4 Greenl., 195; 1 Cox, p. 318; 4 Johns. Ch., 334–338.

WALKER, P. J. COM. APP.— The second assigned error relates to the alleged error of the court in sustaining the plaintiff's exceptions to defendants' first amended answer, filed February 22, 1876, and second amended answer, filed November 1, 1876. The former is thus stated in the brief of appellant's counsel:

"That defendants' ancestor died February 28, 1868; that if any breach of bond occurred it was after this date; that the bond was conditioned on happening of events which did not happen before his death; denies that he left estate valued at $100,000, but did not ex-

ceed $5,000; that he owed at least $80,000; that defendants did not receive one cent from his estate; that he was released by party to whom bond was payable; denies that Lane and Swisher are insolvent, or that no money can be made out of McKinney on execution; that they are all responsible, and men of large means; that neither George W. Glasscock, deceased, nor defendants, were parties to suit on the bond in United States circuit court; that if any judgment was rendered in said court on said bond against Lane and others for $10,000, it was not rendered on verdict of a jury, or submission to the court, but upon agreement of plaintiff and one or all the defendants in said action and United States officers; that George W. Glasscock, deceased, nor these defendants were not parties to it, nor consulted about it; that this judgment was not paid by plaintiff, nor the sureties who were parties to that suit, but by Lane, the principal; that plaintiff herein never paid a cent of it, except through Raymond, or Raymond & Whitis, as agents and bankers of Lane; that, if ever liable, aver that plaintiff herein never advised them of the fact that they might join him in the defense; denied that plaintiff ever paid out any attorney's fees at their request; that if plaintiff ever paid any part of the judgment it was without compulsion, and that full amount of same could have been made out of Lane, if execution had issued; that no execution issued; plaintiff made no effort to have it collected from Lane; deny liability until due diligence to collect from Lane is shown; that if it is true, as heirs of George W. Glasscock, deceased, they are liable for any portion of the judgment, to wit, $3,800.50, alleged to have been paid by plaintiff; that in fact his rightful share was only $2,500.50; that they are only liable for one-half of this, and Swisher for the other half, and if liable at all, these defendants are only liable for $646.75; that all defendants in this suit, except P. W. and F. M. Hall, are children of George W. Glasscock, deceased, and Cynthia C. Glasscock, deceased; that said G. W., deceased, and Cynthia C., deceased, intermarried in 1837; that G. W., deceased, had no money or property, but Cynthia C. received from her father's estate $5,000, and allowed G. W., deceased, to operate on this money for the benefit of her separate estate; that as a matter of convenience he bought lands and took titles in his own name; that in thus buying land and land certificates and other property, it turned out that a large amount of property stood in name of G. W., deceased, which was in fact the separate property of his said wife, and held by him in trust for her; that at time bond was signed he had no separate property; that he was not the owner of any property in his own right; that Cynthia

C. died November 7, 1866, leaving her children and M. C. Boatner her heirs; that her heirs, for convenience, still allowed Geo. W., deceased, to manage her estate, they being too young so to do; that her estate, including that in name of Geo. W., deceased, did not exceed $75,000, and indebtedness of the estate was $80,000, a list of which was appended and made an exhibit and part of answer; averred insolvency of the estate; that Geo. W., deceased, made a will leaving his and Cynthia C.'s property to surviving children, subject to these debts; that these debts had been paid out of the estate and by the heirs, to wit, $80,000, a list of which was made an exhibit and part of the answer; that, in fact, defendants never received anything from estate of Geo. W., deceased; that if G. W. Glasscock ever incurred liability by the execution of said bond, or the breach thereof, such liability accrued more than four years before the payment of the money by him, and more than four years before suit brought, and that claim is barred by limitations; that any liability that G. W., deceased, may have incurred, was incurred more than five years before judgment against plaintiff, and before alleged payment by him, and that it is a stale demand and barred by limitation; that if Geo. W., deceased, was ever liable on the bond, that liability was to the United States, and had ceased by running of statutes of limitation, and that they owe plaintiff nothing."

The answer, it will be noticed, contains very many matters which are distinct from each other, and are relied on as constituting a defense to this action. To determine the sufficiency of the answer it is necessary to consider each of them separately, and thereby determine whether any one or more of the grounds relied on constitute a valid answer to the plaintiff's petition. The special exceptions to the answer questioned the sufficiency of all, or nearly all, the principal matters set up in it upon numerous grounds. The assignment of error for sustaining the exceptions is wholly vague and indefinite, assigning in general terms that the court erred in its ruling as shown by the bill of exceptions, which is itself quite as general in its character as the assignment of error.

The defense set up in the answer of a release of defendant's ancestor by the obligee of the bond states a mere conclusion of law without averring the acts or facts which constituted such release. This plea was wholly insufficient for vagueness and uncertainty, and was subject to exceptions. Mims v. Mitchell, 1 Tex., 443, 446; Caldwell v. Haley, 3 Tex., 317; Wright v. Wright, 3 Tex., 168, 180. An answer consisting of legal conclusions, deductions from facts

not disclosed, and vague references to facts dimly portrayed, is no defense. Walton v. Reager, 20 Tex., 103, 108.

The exception was properly sustained to this portion of the answer.

To the defense set up, that the breach of the conditions of the bond occurred subsequently to the death of defendants' ancestor, it is a sufficient reply to it that the petition does not allege whether the obligation sued on was joint, or whether it was several as well as joint, and the answer does not allege that it was joint and not joint and several. The bond was given under the laws of the United States, and the rule of the common law would be applicable to it in determining its obligation, unless qualified by acts of congress. The common law rule is that, when the surety on a joint obligation dies, there is no remedy at law on the obligation against his estate, and, in the absence of fraud or mistake, equity will not charge his estate with the payment of such obligation. Brandt on Suretyship, sec. 117. See, also, Fielden v. Lahens, 6 Blatch., 524; Getty v. Binsse, 49 N. Y., 385; 1 Story, Eq. Jur., secs. 162–4; 9 How. (U. S.), 90; 15 Wall., 140. The rule, it seems, is different as to obligations that are joint and several. See Pickersgill v. Lahens, 15 Wall. (U. S.), 141.

When the obligation of the sureties is joint and several, the discharge of one of them does not release the others from payment of their proper proportion of the claim. De Colyar on Guaranty, etc., 406, note — citing Klingensmith v. Klingensmith, 31 Penn. St., 460; Barrow v. Shields, 13 La. Ann., 57; Alford v. Baxter, 36 Vt., 158.

A statute formerly existed in our state and was in force until the Revised Statutes went into effect (see Laws of the Republic of Texas, Fourth Congress, 1840, p. 73; Hart. Dig., art. 635), which held the estates of those jointly bound with another, after the death of the former, the same as if the obligors had been bound severally as well as jointly. See Bergstroem v. State, 58 Tex., 95; Mays v. Cockrum, 57 Tex., 353. According to the decisions cited, if the question made here were to be determined by the laws of this state in force at the accrual of the plaintiff's cause of action, the defense of the death of the defendants' ancestor after the date of the breach of the conditions of the bond would not be available; and, as we have seen, is not so under the laws of the United States governing the legal effect of the bond, provided it were joint and several in its obligation upon the makers of it.

It appears from the statement of facts that the bond was joint and several, and if the court had erred in sustaining the exceptions

to this part of the answer, such error would not afford ground for reversal, because the error would have been merely abstract, as the evidence conclusively showed that the defendants could not have been prejudiced by the ruling. See Bradshaw v. Davis, 12 Tex., 336. Where the ruling does not affect the result of a case, it will not be revised. Woods v. Durrett, 28 Tex., 429; and see McClenny v. Floyd, 10 Tex., 164. Where the judgment of the court does not appear to have affected injuriously any subsisting right of a party complaining of its action, the error or irregularity will not be ground for reversal. Wofford v. Thompson, 8 Tex., 225; Autrey v. Cannon, 11 Tex., 114; Mercer v. Hall, 2 Tex., 284.

The answer denies that defendants received any property from the estate of their ancestor. The plaintiff's petition charges that they received from said estate property of the value of $100,000. The defendants' answer of general denial put in issue the allegations of the plaintiff, and, consequently, the defendants were not prejudiced by sustaining exceptions to that portion of the answer, and evidence on their part was admissible under the pleadings to maintain the truth of the matters averred in the answer. The same may be said in regard to that portion of the answer which denies that Lane, Swisher and McKinney are or were insolvent.

It does not furnish a defense against contribution by a surety that his co-surety has paid a judgment against himself to which the surety against whom contribution is sought was not a party. In such case it has been held that the judgment is competent evidence to show the amount of the payment made by the plaintiff, and the circumstances under which it was made, but not for the purpose of proving the liability. Brandt on Suretyship, sec. 246, citing Fletcher v. Jackson, 23 Vt., 581.

A surety may pay without suit and demand contribution under proper circumstances; a fortiori he may pay what is justly due, and exact contribution where judgment has been rendered against him therefor, irrespective of whether his co-sureties are parties to the suit. "The law requires no one to wait for a suit, if he has no defense." 1 Parsons' Con., 32. The essential equity of the surety asking contribution consists in the fact that he has paid so much of a debt for which he and his co-surety were bound that was just and enforceable at law against them both. "In an action for contribution between co-sureties, the record of a judgment recovered by the creditor against the principal and one of the sureties, to which the other surety is not a party, is competent evidence to prove the rendition of such judgment, by way of inducement to evidence that the surety

against whom it was rendered has paid it." Brandt on Suretyship, sec. 529; Preslar v. Stallworth, 37 Ala., 402.

The answer alleges that if plaintiff ever paid any part of the judgment it was without compulsion, and that the full amount of the same could have been made out of Lane, if execution had issued; that no execution issued; that plaintiff made no effort to have it collected from Lane; they deny liability until diligence to collect from Lane is shown.

The rule of law applicable to the subject is that, as soon as the debt becomes due, any one of several co-sureties may, without suit or compulsion on him of any kind, at once pay the debt and recover contribution from his co-sureties. All the co-sureties are equally liable for the whole debt, and a payment of the debt by one of them after it is due and without compulsion is in no sense a voluntary payment. Brandt on Suretyship, sec. 257, citing Judah v. Mieure, 5 Blackf., 171; Bradley v. Burwell, 3 Denio, 61; Stallworth v. Preslar, 34 Ala., 505; Pitt v. Purssord, 8 Mees. & Wels., 538; Lucas v. Guy, 2 Bailey, Law, 403; Linn v. McClelland, 4 Dev. & Batt. (Law), 458. But if, as alleged in the answer, Lane was solvent, and that the amount of the judgment could have been collected from him, the rule is that no contribution can be enforced against a co-surety by a surety who paid the judgment under such circumstances, unless the principal's insolvency shall be shown. Brandt on Suretyship, sec. 254.

The plaintiff having alleged Lane's insolvency it devolved on him to establish it by proof, and it was competent for the defendants to rebut by evidence such proof, and show, if they could, his solvency. Consequently, the answer on the subject under consideration could only be made available under the law as we have stated it to be, as a traverse of the alleged insolvency, and the defendants could effect the same result under their answer of general denial. The issue as to Lane's solvency was submitted to the jury under the charge of the court, and it does not appear that the defendants were denied the opportunity to prove Lane's solvency if they desired to, or were able to do so. We think there was no error in sustaining exceptions to this portion of defendants' answer.

The allegations of the answer to show that the property of which defendants' ancestor died possessed, and which was ostensibly community property, was in fact the separate estate of their mother, and the title to which in the name of their father was by him held and acquired in trust for their mother, are not sufficiently explicit, specific and definite to rebut the implication from the facts stated, that

the property was acquired by the joint industry of both husband and wife during their marriage, and was therefore community property, charged perhaps with the $5,000 which the husband used as the wife's separate means in its acquisition. Where the separate property of the wife has undergone mutations, it is indispensable, in order to maintain its separate character, that it be clearly and indisputably traced and identified. Chapman v. Allen, 15 Tex., 278.

The facts alleged do not import an investment by G. W. Glasscock of the money in any certain designated lands or land certificates of which he died possessed; nor, if so invested and the purchases so made afterwards changed, or repeatedly changed into other property, and thus traced into the property of which he died possessed, unmixed with his own capital or labor or that of the common industry or community means of himself and his wife. But, to the contrary, the vague and general terms which are employed by the defendants in stating the means whereby, during a long series of years, their ancestor, from a small capital, $5,000, accumulated a large estate by buying lands, land certificates and other property, in the absence of any definite designation and history of the transactions referred to, are quite consistent with the supposition that during that long period his own means and industry contributed to the general result. The pleadings of a party are to be taken, on exceptions, most strongly against the pleader, and we think the answer was insufficient.

The plea of the statute of limitations set up in the answer is not sufficient. It is true that if the payment made by the plaintiff was voluntary after he ceased to be liable, he could not claim contribution. Skillin v. Merrill, 16 Mass., 40; Russell v. Failor, 1 Ohio St., 327. Nor could he recover contribution of a co-surety, as to whom the debt was barred at the date of payment. Shelton v. Farmer, 9 Bush (Ky.), 314. But where the surety who seeks contribution has paid the debt under a judgment which was rendered against him on the principal cause of action, in a suit brought on it before it was barred by limitations against him or his co-surety, the payment made by him at a subsequent period, at which period the original cause of action would be barred by lapse of time, would not be the payment of a debt, in any proper legal sense, barred by limitations in favor of his co-surety at the time of such payment. In such case the party seeking contribution would have paid the debt under compulsory legal process under circumstances which, as we have seen in the discussion of another point in the course of this opinion, would subject co-sureties who were not parties to the suit to

contribution. The facts stated in the plea of the statute of limitations, if true, do not negative the plaintiff's right to recover. It is laid down by Parsons (1 vol., 36) on Contracts, that "The contract on which the assumpsit is founded dates from the time when the relation of co-surety or co-obligor is entered into; although the cause of action does not arise till the payment. Hence the discharge of one of the joint debtors (by whatever cause) from his direct liability to the creditor does not relieve him in law, any more than in equity, from his obligation to indemnify such of the remaining joint debtors as have borne more than their original proportion of the debt." A note to the foregoing adds, "Accordingly, where the liability of one joint maker of a promissory note was continued by partial payments within six years, but the remedy of the holder against the other was barred by the statute of limitations, the debtor who continued liable could notwithstanding recover contribution from the other after paying the debt." Peaslee v. Breed, 10 N. H., 489; Boardman v. Paige, 11 N. H., 431; Howe v. Ward, 4 Greenl., 195.

The statutory bar under the statutes of the United States was five years in pecuniary actions for penalties or forfeitures, but we are not able to find any limitation law in the Revised Statutes of the United States which is made applicable to such obligations as that on which these parties were liable. We apprehend, therefore, that no question of limitation could have arisen in this case, except as it might have done so between the parties to this suit on account of the amount paid by plaintiff as surety as an account for money paid for the benefit of plaintiff's co-sureties, regardless of the time which had run on the original obligation before suit was brought. The law of limitation of our own state must, therefore, afford the rule applicable to that state of case, and it is not deemed necessary to discuss this phase of the subject, because the plea of the statute is not pleaded in terms which can make it apply to the lapse of time which occurred between the date of the payment of the money by the plaintiff and the date of the institution of this suit. The plea seems to have reference to the supposed liability of G. W. Glasscock, deceased, on the bond, and not to the liability of his heirs to reimburse the plaintiff on account of the payment of the money which is the subject of controversy in this action. To constitute the plea a good one, it should distinctly have alleged that the period of the bar of the statute had elapsed from the date of the payment made by plaintiff and that of the institution of this suit. A fair construction of the language used in the

plea evidently refers the object of the pleader to set up as a defense that G. W. Glasscock or his heirs were protected by the bar of the statute against the original obligation at the time of payment by plaintiff, and were so protected at and before the institution of this suit. The statement of facts shows clearly that the money was paid 2d day of March, 1875, and this suit was instituted in June of the same year, and it would seem hardly probable that the defendants meant to urge a defense to the effect that limitations had run against a payment so recent. The whole context of the plea, however, sufficiently indicates, we think, the correctness of our construction of its very general and rather indefinite language. The liability of Glasscock or his heirs referred to in the bond, according to the terms of the answer, is that which resulted from "a breach of the bond," and that defense, as pleaded, does not properly refer to the cause of action on which plaintiff sues.

The second amended answer, referred to as having been stricken out on exceptions of the plaintiff, alleges:

"*First.* That during first portion of time Lane discharged duties as collector, John M. Swisher & Co., composed of said Swisher and James H. Raymond, were engaged in banking and exchange business in Austin, where Lane's office was kept; that Lane for a long time, and during existence of firm of Swisher & Co., made his deposits in said banking house; that Raymond, being surety on Lane's bond, required deposits to be so made; thus large amounts of exchange, in quartermasters' and commissaries' drafts, went from Lane through their hands, from which they derived large profits in exchange, to wit, $10,000, or some such large sum, which was appropriated to their use; that Raymond was equally interested in said gains, and same never accounted for to government or Lane, or co-sureties on bond.

"*Second.* That on dissolution of said firm of Swisher & Co., in Austin, Swisher engaged in same business in Galveston, in name of Hewitt, Swisher & Co., of which firm Raymond was a secret and silent partner; said partnership evidenced by written articles of agreement, signed by Swisher and Raymond, Raymond to receive a portion of the proceeds, and liable for money placed therein.

"*Third.* That during the existence of said house, Lane was required to make deposits in the First National Bank, of Galveston, and, in doing so, his remittances in money and exchange were made through Raymond, at Austin, and Hewitt, Swisher & Co., Galveston; at and before breach of bond had remitted $13,000, or other large sum which was not paid over, but retained by said house, and appropriated by them for their own use and benefit, and same never paid

government or Lane. Raymond was advised of this, and knew his liability therefor, and afterwards acknowledged his liability therefor, and promised to pay same on account of Lane into the treasury of the United States, or to the proper officer thereof.

"*Fourth.* That the house of Hewitt, Swisher & Co. failed, and became insolvent. Swisher afterwards continued business under name of John M. Swisher & Co., and Raymond continued as a partner with him, and liable for debts of this house.

"*Fifth.* That Lane continued to transmit funds collected through this house, which appropriated and failed to pay over, to wit, $13,000, or some other large sum, by which Raymond & Swisher became liable to pay same on account of Lane into treasury of United States.

"*Sixth.* That afterwards Lane, desiring his account to be settled, and that said sums should be deposied in the treasury, urged Raymond and Swisher to pay or make provision by which he would be, and held, harmless. Whereupon Swisher signed and acknowledged a deed to convey to Lane or whoever he might designate all the real estate owned by Swisher in Austin, except homestead, consisting principally of lots of the value of $20,000 at the time. A blank was left in deed for description of the property, which deed was by mail transmitted by Swisher to Raymond to insert description of property and name of grantee, with instructions to deliver as Lane should direct. Raymond received the deed with instructions, and promised Lane to perfect the same as per instructions and deliver it to him that he might sell and realize said amounts and settle account. That Raymond, in disregard of instructions, and in violation of promises, and acting under a power of attorney made by Swisher to him years before, made pretended sale of the property to C. W. Whitis for $10,000, which Raymond appropriated to his own use and benefit; that Raymond and Whitis formed a partnership in banking and exchange business, in Austin, and that the property so sold was entered on their books and has since been disposed of, and divided between them as partnership property, whereby Raymond has appropriated to his own use this property, now worth $40,000, all of which, or a sufficiency, should have been applied to payment of amounts that Hewitt, Swisher & Co., and John M. Swisher & Co., had failed to deposit, and which Raymond was bound and liable to pay, and promised Lane to pay, into the treasury on his account.

"That the amount received by Raymond was in excess of the just demands of the government on Lane as collector; that after

Hewitt, Swisher & Co. and John M. Swisher & Co. had suspended, B. F. Hammond instituted suit against Swisher to recover trust funds he had placed in hands of Swisher, and recovered judgment for $15,000, and caused execution to issue and be levied on said property, and at the sale became the purchaser of the property; and afterwards Raymond, in order to secure title to Whitis, under the conveyance made by him, agreed with Lane that if he would obtain a transfer of the Hammond judgment and of the title acquired by Hammond for benefit of Raymond, he furnishing the necessary money, that he, Raymond, would pay off the amount due by Lane to the government. In consideration of said promise by Raymond, Lane procured the transfer of the judgment and title of Hammond to the property, and the same was received and appropriated by Raymond & Whitis for benefit of themselves; that by reason of said promises, and in consideration of said services from Lane, Raymond became bound to pay said money to United States, and that Raymond, by reason of these transactions, had not paid any money to the government by reason of his suretyship. An exhibit is made of the property received and appropriated by Raymond, and defendants allege that plaintiff Hamilton was fully advised of these facts, and say if he ever paid any money, as charged in petition, or otherwise, he paid same voluntarily, with full knowledge that Raymond was liable and bound to pay the full sum claimed by United States government from Lane, and which Lane was justly and legally liable for, and that he was further advised and informed before paying, if any he paid; that Raymond was not only liable and bound to pay same, because of facts herein alleged, but that he, Raymond, had ample means (property and money) to pay the same. Defendants again deny their liability to plaintiff for any amount, and aver that he ought not further to have and maintain his action against them, and conclude to the country, and pray to be discharged with their costs," etc.

This answer, on exceptions, was stricken out and held for naught, and exceptions saved by bill of exceptions.

The defense which this answer, in effect, sets up, is that because of Raymond's obligation and promise made to Lane to pay the debt due on the bond to the government, a payment made of a portion of the debt by Hamilton, Raymond's co-surety on the bond, will be made at his peril unless he shall first see to it that Raymond shall comply with his collateral obligation to Lane by paying the money due on the bond to the United States treasury; and that, failing to pursue such remedy against Raymond, a payment by him, Hamilton,

on account of the bond debt will deny to him the right to demand contribution from the heirs of Glasscock. Appellants' counsel cite in support of the validity of the answer the following cases: Smith v. Conrad, 15 La. Ann., 579; Elwood v. Deifendorf, 5 Barb. (N. Y.), 405; Skillin v. Merrill, 16 Mass., 40; Morrison v. Poyntz, 7 Dana, 307; Morrison v. Taylor, 21 Ala., 779. The rules of law stated in these cases do not in anywise, as we conceive, support the proposition contended for by the appellants. These cases mainly relate the principles of law which apply to sureties who may have had the benefit of securities given to indemnify them against loss on account of their suretyship, and under these several cases various rules of law, familiar to the text-books, are illustrated, mainly showing that on questions of contribution between sureties thus receiving such securities and their co-sureties that all the sureties will be entitled to its benefits; that the security taken by one inures to the benefit of all. Under this generic equity, it is held in one of the cases, that a surety who is fully indemnified by his principal cannot recover contribution from his co-surety for money paid by him, but must indemnify himself out of the means placed in his hands. Also, in Smith v. Conrad, 15 La. Ann., 579, held that a fund deposited by the principal debtor with one of two co-sureties, as collateral security, should inure to the benefit, proportionally, of the other co-surety. These propositions are unquestioned, and are quite distinguishable from that presented by the answer. We think it too clear for argument that the answer presents no defense.

If the debt due from Raymond to Lane is to be regarded either as indemnity to secure the former or as assets for the benefit of the obligee of the bond, whatever may have been the rights of the United States to have enforced the appropriate remedy against Raymond to subject such security to the payment of Lane's defalcation (see Brandt on Suretyship, sec. 282), we know of no principle of law or equity which exempted other sureties from payment of the debt because of the existence of such a transaction as the answer sets forth between Lane and Raymond, and which would constitute a payment by such surety an undue voluntary payment, which would exonerate other sureties from their ordinary liability to contribution. The case presented differs essentially in principle and in justice from a case where Raymond had paid the debt and was seeking contribution from his co-sureties without accounting for the value of the means which he had received from Lane wherewith to pay the debt. There was no such privity between Raymond and his co-sureties as entitled the latter to sue him, or

otherwise enforce the payment of his obligation to pay the debt, or that made it their duty to decline the payment of their obligation as sureties until the results of Raymond's obligation to Lane should be tested by the enforcement of legal remedies upon it. Raymond, Hancock and McKinney all were sureties on the bond, and they were alike liable to pay the debt; and their liability, so far as the obligee of the bond was concerned, did not depend on, nor was it varied by, the consideration that Raymond had obligated himself in a collateral contract with Lane to pay the debt, although such promise to do so may have been based upon the acquisition by Raymond of property from Lane as the consideration of that promise. The principal creditor had the right to demand payment from all the sureties, and judgment had been accordingly rendered to that effect against those three sureties above named. The obligation of Raymond to pay the whole debt was not increased by his collateral promise; he was liable for the entire amount without reference to it, and such was the liability of the other sureties, and the fact that Raymond may have received means, or a consideration from Lane which might save him harmless, did not alter the relative rights of the obligee of the bond and of the other sureties, or the liabilities of the latter to pay the debt on the default of the principal.

On a question of contribution between Raymond and his co-sureties as to payments made by Raymond, the case might be quite different, and require the application of principles and rules of equity to which the authorities cited in the brief of appellants' counsel might be apposite, but which we need not stop now to consider. If the transaction between Lane and Raymond be regarded as affording to the latter a security for indemnity and for the payment of the debt, the other sureties would be entitled to obtain the benefit of the same in proper proceedings having that object in view (see 1 Story, Eq. Jur., sec. 499); but no such proceedings are here involved, and we will not discuss this phase of the subject. It is sufficient to say that the case here presented is not one for subjecting any such security held by Raymond, nor his collateral engagement and liability, to the payment of the debt, nor for the assignment of it to those who have paid the debt for their advantage and benefit; but the question is, whether such security or collateral liability on the part of Raymond constitutes a defense in favor of his co-sureties against payment of the debt, and if so paid by them, whether such fact is a valid defense to a non-paying surety against contribution? We think it is not.

The third assignment of error is that the court erred in refusing permission to defendants to amend the answers which have been discussed in this opinion.   On the exceptions being sustained the defendants asked leave to plead over and to embody in a further amendment all their grounds of defense, which was overruled because it came too late, and because some matters were sought to be again pleaded.   The parties had announced readiness for trial, and the ruling transpired thereafter on the hearing of the exceptions. It was too late to offer an amendment as to defenses not hitherto pleaded and embraced in the answers excepted to and ruled on, and the court did not err in refusing to allow an amendment to "embody all their grounds of defense."   The right to amend pleadings. to which exceptions have been sustained only authorizes the amendment of the pleadings held to be defective.   The right to amend, after sustaining exceptions to pleadings, extends only to curing by amendment the pleading held to be defective, and does not authorize, as a matter of right, the pleading of new and independent matter, though it is no doubt within the discretion of the court to permit a party to do so.   This court will not review its action in rejecting a proffered amendment, of this character, unless it clearly appears that wrong or injustice has been done thereby. Ann Berta Lodge v. Leverton, 42 Tex., 21.

There was no error in refusing to allow an amendment for the purpose asked for; nor is the error assigned well taken that the court erred in refusing to allow the defendants to read before the jury the answers held insufficient to be read to the jury as part of the pleadings.

When exceptions to the answers were sustained they ceased to constitute a part of the pleadings for the purpose of presenting issues between the parties, and to read them to the jury as such, would be not only irrelevant, but perhaps might mislead, or confuse the minds of the jury.   If the court erred in the ruling sustaining exceptions to them, and the defendants desired to still further urge before the court their sufficiency, the mode of effecting that object was not by offering to read the answers after they had been determined insufficient, but by seeking to obtain from the court a reconsideration of its ruling before the trial reached the stage of presenting the issues or pleadings of the parties to the jury. The rule fifty-second for the district court, not in force at the time of the trial however, provides for the mode by which such reconsideration may be had, which is, "if counsel think the court has fallen into error as to law or fact, they may submit a statement in

writing, which the court will receive and consider." Before the enactment of this rule, it was within the court's discretion to entertain the application of counsel for such reconsideration; but no such application having been made, nor any other action taken by the court than to determine the answers to be insufficient, it was incumbent on the defendants' counsel to submit and acquiesce in the ruling, and they will not be permitted virtually to renew the consideration of the questions arising upon the exceptions by offering to treat the answers as pleadings recognized as such by the court in the face of its distinct contrary adjudication.

The fifth assignment is as follows, to wit: "The court erred in admitting in evidence, over objections of defendants, the certified copy of petition and judgment in cause No. 1243, in the circuit court of the United States for the western district of Texas, as set out in defendants' fifth bill of exceptions, for reasons therein stated."

Plaintiff read in evidence the petition in the United States circuit court, and the judgment of that court upon it, which recites that G. W. Glasscock is dead and has been dismissed heretofore without prejudice to plaintiff (United States), and his representatives and heirs not being parties, no action on judgment is had on them, but they are dismissed without prejudice to government or co-sureties, Hamilton, Raymond, McKinney and Swisher; and, after verdict and judgment for $34,384.03, recites that, it "appearing to the satisfaction of the court that plaintiff (United States) is willing to accept, by way of compromise from ... Morgan C. Hamilton, James H. Raymond, James P. McKinney and James M. Swisher a less sum than the whole ... judgment of $34,384.03," to wit, the sum of $10,000 and costs, including attorneys' fees of two per cent. on $10,000, it is decreed that when said sureties, Hamilton, Raymond, McKinney and Swisher, or any or either of them, pay $10,000 and costs, as stipulated, then said sureties are forever held acquitted and discharged from liability by virtue of said judgment of $34,384.03, said discharge not affecting liability of Lane; and, in event of one or more of said sureties paying the $10,000, they are subrogated to rights of the government as against co-sureties and principal, and shall have execution in name of plaintiff against the other sureties to compel contribution, etc.

Defendants objected to the introduction of this evidence "because their ancestor, George W. Glasscock, deceased, nor themselves were not parties to said suit, nor to the said judgment. Second. Because it appears therefrom that neither defendants nor their ancestor had had their day in court. Third. Because it appears from said certi-

fied copy, the judgment was an agreed one, not *res adjudicata* as to defendants, and does not preclude the United States from further proceedings against these defendants. Fourth. Because defendants take no advantage from said judgment over against the principal. Fifth. Because the same is irrelevant and creates no liability on the part of the defendants." These objections were overruled and the evidence admitted and exceptions saved.

The relation which this judgment bears to the subject-matter of this litigation — the plaintiff's cause of action for contribution — has been, to some extent, discussed in a previous part of this opinion. This action is not based upon the judgment, and, as has been already said, it is competent evidence to establish the fact of payment by the plaintiff, and the circumstances and conditions under which the payment was made. The authorities cited by the appellants' counsel fully support the incontrovertible proposition that the ancestor of defendants nor his heirs are not bound by a judgment against either the principal nor their co-sureties to which said ancestor nor themselves were parties. The distinction applicable to the question is clearly presented in Moss *v.* McCullough, 5 Hill (N. Y.), 134. That case was an action of debt against defendant as a stockholder in the Rossie Lead Mining Company. The plaintiff proved a note of the company, payable to the order of Moss and Knapp, . made while the defendant was a stockholder, together with a judgment upon it in favor of the plaintiff against the company, followed by an unavailable execution. The defendant proposed evidence tending to impeach the note as wholly or partially invalid, because given for property the company had no power to purchase. The defense was overruled on the ground that the defendant was concluded by the judgment. The ruling of the court was held to be erroneous; Justice Cowen, delivering the opinion of the court, said: "That the contract of a surety, naked and without any stipulation to abide a judgment or decree against the principal, is not affected by it, we held after much consideration in Douglass *v.* Howland, 24 Wend., 35, 52 to 59. The contract is to pay the debt — not the judgment. . . . The general doctrine of Douglass *v.* Howland has recently been reviewed and affirmed in the court for the correction of errors. Jackson *v.* Griswold, 4 Hill, 522. The question was embarrassing and the cases far from being uniform. The decided weight of authority, however, both at law and in equity, was found to be against allowing the surety to be at all embarrassed by the judicial proceeding. He stands, as was held in Slee *v.* Bloom, on the precise rights of his principal under the contract. If the latter

can defend, so can the surety. The surety is bound by the acts *in pais* of the principal or his agents, but is neither bound nor touched by any judicial proceeding to which the principal alone is a party; nay, says Jackson *v.* Griswold, even though he actually participate in the prosecution or defense, unless he be a party to the record." Justice Bronson, in the case quoted from, added, in remarks made in review of the case of Moss *v.* Oakley, 2 Hill, 265: "When he (the shareholder) is sued, the judgment must be given in evidence for the purpose of showing that one of the events has happened which give an action against the shareholder. But I think the judgment is neither conclusive nor *prima facie* evidence against the stockholder of the original debt or demand against the company. That must be proved in the same manner as though the judgment had not been recovered."

The indebtedness of Lane to the United States on the bond was established fully by the testimony of Lane himself, which was wholly uncontradicted, and that indebtedness was by him shown to be largely in excess of the amount of the judgment for $10,000 against the sureties against whom it was rendered. The plaintiff in this suit, therefore, having thus shown the existence of that liability against himself as surety, the payment of it by him and two other of his co-defendants entitled him to contribution for the excess paid by him over his *pro rata* share, regardless of whether George W. Glasscock or his heirs were parties to the judgment or not.

We will pass over numerous assignments of error which we deem not essential to be discussed in view of their relative unimportance, and the more controlling consequence of the last, which is that the court erred in overruling defendants' motion for new trial, one of the grounds of which was, that the verdict and judgment were contrary to the law and the evidence.

We have seen that the plaintiff seeks a recovery on the ground of having paid in excess of his aliquot share of the debt due to the United States, and that the defendants are legally and equitably liable to contribute their share towards his reimbursement. The evidence showed that the debt due from Lane to the United States amounted to at least $31,000, probably without computing interest. The judgment of the United States circuit court was rendered against Lane, Hamilton, Raymond, McKinney and Swisher for $34,384.03, which judgment proceeded to adjudicate a conditional release of all of said defendants, save and except Lane, based upon a composition or compromise with the above named sureties, to the effect that if they or either of them should pay on said judgment the sum of

$10,000 they should be acquitted and discharged from said judgment without affecting the liability of Lane, and in no wise including G. W. Glasscock or his heirs in the benefits of said composition and discharge, nor otherwise exempting them from liability with Lane on account of Lane's indebtedness. This judgment has already been partially set forth in some of its parts, but, in the connection now under consideration, it will be proper to give it in full in its very terms, as follows:

"UNITED STATES

1243           v.

R. N. LANE, G. W. GLASSCOCK, MORGAN C. HAMILTON, JAMES P. McKINNEY, JAMES H. RAYMOND, JAMES M. SWISHER.       In the United States Circuit Court for the Western District of Texas.

"Be it remembered that upon this day came the United States of America, by her attorney, A. J. Evans, and each and all of the aforesaid defendants save and except G. W. Glasscock, who is dead, and who has been dismissed heretofore without prejudice to the plaintiff; and his legal representatives not being parties hereto, no action or judgment is had on them; but they are dismissed without prejudice to the government or their co-sureties, Hamilton, Raymond, McKinney and Swisher, who appearing by their attorneys, and the government announcing ready for trial, and the defendants making no motion for further delay — thereupon came a jury of twelve good and lawful men, viz.: John Richardson, foreman, and eleven others, who being duly sworn, and having heard the evidence in the cause and the charge of the court, retired to consider of their verdict, and afterwards returned into open court the following verdict: We, the jury, find for the plaintiff and against the defendants, Richard N. Lane, Morgan C. Hamilton, James H. Raymond, James P. McKinney and James M. Swisher, the sum of thirty-four thousand three hundred and eighty-four dollars and three cents. John Richardson.

"It is therefore ordered, adjudged and decreed that the plaintiff do have and recover of and from the aforesaid defendants the sum of $34,384.03, and all costs of suit in this behalf expended, said costs to include a fee of two per cent. upon said $34,384.03, taxed for the use of Andrew J. Evans, United States attorney for the western district of Texas, and that plaintiff have her execution therefor; and it appearing to the satisfaction of the court that the plaintiff is willing to accept by way of compromise, from the defendants Morgan C. Hamilton, James H. Raymond, James P. McKinney and

James M. Swisher, a less sum than the whole of the aforesaid judg-
ment of $34,384.03, to wit, the sum of $10,000 and all costs, includ-
ing an attorney fee of two per cent. on the ten thousand, to be taxed
as costs and paid to Andrew J. Evans, United States attorney for
the western district of Texas: It is therefore ordered and consid-
ered and adjudged and decreed, that when the said sureties, Morgan
C. Hamilton, James H. Raymond, James P. McKinney and James
M. Swisher, or any or either of them, shall pay over to the plaintiff
said aforesaid sum of $10,000 and all costs as last above stipulated,
then *said sureties aforesaid* are *forever held acquitted* and *discharged*
from any and all *liability* by virtue of the above judgment of thirty-
four thousand and three hundred and eighty-four dollars and three
cents ($34,384.03),— said discharge not affecting the liability of said
R. N. Lane, the principal, and that the government have her execu-
tion to carry out this judgment. And it is further ordered, consid-
ered and adjudged that should said sum of $10,000 be paid by one
or more of the said sureties, then the sureties so paying be and they
are hereby fully subrogated to the rights of the government, as
against their co-securities and principal, and shall have their execu-
tion in the name of the plaintiff against *said other sureties* to com-
pel equal contribution among sureties and also their execution
against the principal, R. N. Lane, for all sums paid for him and
costs."

It will be noticed in the foregoing judgment that the United
States, in express terms, reserves against G. W. Glasscock's estate
whatever rights it has against said estate or his heirs, notwithstand-
ing the dismissal of the suit as to him, and the terms of com-
promise with and for the discharge of certain of his co-defendants
and co-sureties, thus leaving these defendants subject to whatever
legal remedies the plaintiff may see proper to pursue against said
heirs and the principal, Lane, against whom the judgment for
$34,384.03 is in terms retained in full force, under an express exclu-
sion, by the terms of the judgment, from the benefits of the
compromise.

Under these facts we are unable to discover upon what principle
of law or equity the plaintiff is entitled to demand contribution
from the defendants. The plaintiff, together with other co-sureties,
compounded with the plaintiff in the suit upon the bond for their
own protection, whereby they obtained a discharge from its obliga-
tion as to themselves for $10,000, pretermitting therein their co-
surety, Glasscock's estate or his heirs, from its advantages, leaving
them liable with Lane for the bulk of the debt. The plaintiff under

the compromise thus made becomes absolved from that liability by the payment of an amount comparatively insignificant compared with his aliquot part of the whole indebtedness, and far less than the amount to which Glasscock's heirs remain liable to pay to the United States under any rule of decision to which they may have to submit in case the United States shall see proper to enforce the remedy which has been reserved against them in the judgment.

The equitable right to contribution, which is administered at law as well as in equity, proceeds upon acknowledged principles of equality and justice, and those principles require that where one jointly bound by a common obligation to pay the debt of another shall pay more than his ratable share of it, that the other shall reimburse him therefor. But if such party shall obtain his own discharge by the payment of less than his ratable proportion of the whole debt, and leave his fellow surety liable to pay to the creditor his own original full share of the debt, there is no rule that can be deduced from these maxims of equality and justice on which to raise an assumpsit that such co-surety should contribute to that one who has thus compromised, paid and obtained his discharge. Whilst each surety is, as to the creditor, liable for the whole debt as between himself and his co-sureties, he is liable to contribution to those paying the debt to no more than his equal portion ratably distributed between those who are solvent and able to sustain with him the common burden.

If Hamilton and his co-defendant sureties in the suit on the bond desired to preserve their equitable demand on Glasscock's heirs for contribution upon payment of the small sums comparatively with which they bought their discharge, it behooved them to have caused to be embraced in the beneficial provisions of the compromise the discharge alike of Glasscock's heirs along with themselves on the payment of $10,000. Failing to make this equitable provision for their benefit, in case such terms could have been made, it must be replied in the words of a learned court, "if a party base his right to recover upon principles of natural equity, the defendant may appeal to the same principles in his defense." If they were unable to effect such terms for the protection of Glasscock's heirs, they cannot complain if, when they are left liable to pay as to the larger part of the debt, the law refuses to impose on them the additional burden of contributing to the payment of the amounts which they paid to obtain their release.

The right to contribution results from the maxim that equality is equity, and it has also been said that it has been considered as de-

pending rather upon a principle of equity than contract; but it may well be considered, said Chief Justice Bibb (Lansdale v. Cox, 7 T. B. Mon. (Ky.), 401), as resting on both for its foundation. Brandt, in his treatise on Suretyship, sec. 228, lays down the maxim that, "as the right to contribution between co-sureties is founded on equitable principles, contribution will not be enforced between them when it would be inequitable." For the illustration of which the author quotes the facts of several cases where contribution was denied under its application, which are sufficiently parallel in principle with the case before us to warrant, we think, the invocation of the rule we have quoted for the benefit of the defendants.

But even under a rule of law more narrow than that above quoted,— one less general and comprehensive in its broad view of natural justice,— one founded on stricter and more technical considerations of the legal effect of the facts,— we think that still the plaintiff must fail in his demand for contribution in this action. For the plaintiff, although discharged from further liability on the principal debt of $31,000, and interest thereon, by the payment of $3,880.50, can at most only claim, under his discharge, exemption from liability to make further payment on the principal debt. He obtains this immunity, not by paying a sum in excess of that for which he was liable together with Glasscock's heirs, but it was only in excess of his ratable portion as between himself and those other sureties who were co-defendants in the judgment. He has paid nothing in excess of the aliqnot share of $31,000 and interest, for which Glasscock's heirs were liable, and not so much even as would have been his own share but for the compromise terms whereby he procured his discharge. He has done nothing, therefore, upon which he is entitled to ask the heirs of Glasscock to remunerate him for an arrangement which was advantageous to himself and others, but did not pay the debt so far as Glasscock's heirs were concerned, nor diminish their liability by reason of his having paid more than his own share.

It is quite true that the principal debt was reduced by Hamilton's payment to the extent of the amount paid by him, but that reduction was one which all the sureties were compellable to make in their own behalf whenever a breach of the bond occurred, and neither surety thus paying his part can seek contribution from the others until he pays more than his own part. If Hamilton and his co-defendant sureties had paid the whole debt with $10,000 that would be a different matter altogether, and contribution would result (Stallworth v. Preslar, 34 Ala., 510); but their payment settled

the debt only as to themselves, and as to no one besides.   Their re-
lease from it did not release Glasscock's heirs, nor extinguish the
judgment against the principal, and such release, although it might
limit the liability of Glasscock's heirs on the principal debt to the
extent that such released sureties would otherwise (but for their re-
lease) have been liable to contribute (see Brandt on Suretyship,
sec. 383, and authorities cited), they would nevertheless be liable for
the residue of said debt over and above the aliquot share which
would have been payable by such released sureties, and the payment
thus made by Hamilton would not therefore in any wise have
diminished the proportional share for which Glasscock's heirs
were, as to the unpaid part of the debt, liable.   The measure of
liability of a surety where other sureties are discharged is thus
stated by De Colyar on Guaranty, 355: "From the case of Fletcher
v. Grover, 11 N. H., 368, it would seem that a discharge of one
surety does not entirely discharge the other co-sureties, but only dis-
charges them for such proportion of the debt as, upon a payment
of the whole debt, they would be entitled to have recourse to him
for."   The same author, p. 406, treating of the discharge of sureties
by the creditor, says: "Thus, it has been decided that it is compe-
tent for creditors executing a deed of composition with the prin-
cipal debtor, and certain of his sureties, to reserve their remedies
against other sureties; and in the very singular case of a release of
one co-surety, with a reserve of remedies against the other, it is
settled that the surety is not discharged."   A note on same page,
quoted in another part of this opinion, is as follows: "When the
obligation of the sureties is joint and several,"—and it will be re-
membered that such is the character of the bond in this case,—"the
discharge of one of them does not release the others from payment
of their proper proportion of the claim."   Citing the authorities
heretofore appended elsewhere in this opinion; and see Potter v.
Green, 6 Allen, 442.   Brandt on Suretyship, sec. 38, states the rule
as to discharge of co-surety thus: "If there are several sureties
liable for the same debt, and the creditor releases one of them from
liability, but does not thereby materially alter the contract, he gen-
erally releases the remaining sureties to the extent that such released
surety would otherwise have been liable to contribute to his co-
sureties."

Thus it appears that the defendants were not released from the
payment of the remaining portion of the debt, and supposing the
unpaid part to have amounted to $24,384.03 (after deducting the pay-
ment of $10,000), under the rules of liability to the creditor which

have been quoted, it is obvious that they are liable to pay a portion of the whole debt largely in excess of that paid by the plaintiff, and that the sum paid by the latter contributed only in a small degree in diminishing the amount of the principal debt thus, at last, forced, or liable to be forced, upon them for adjustment.

The principle under discussion is clearly applied in the case of Stallworth v. Preslar, 34 Ala., 509, 510, which was a suit for contribution between sureties. The plaintiff had paid a judgment of nearly $3,500 with $1,000, and sued his co-surety for contribution. In the course of the opinion, it is said: "It may be conceded, without affecting the result of this case, that unless the plaintiff can show that he has paid a greater sum than the defendant remains liable to pay, he cannot maintain this action. See *Ex parte* Gifford, 6 Ves., 805. If, however, the entire liability is discharged — canceled — against *both* sureties, then the plaintiff has paid a greater sum than the defendant can ever be required to pay to the creditor; for he can never be required to pay anything to him. In such case, if he is not liable to his co-surety, he is liable to no one."

In this state the technical rule of the common law, that, upon a contract which is joint and several, the plaintiff must sue all or but one, and cannot sue two or more without suing all, has never been recognized in our practice. Cook v. Phillips, 18 Tex., 33. It was competent for the plaintiff in the suit in the United States circuit court to discontinue as to Glasscock (see Ibid., and Austin v. Jordan, 5 Tex., 130), and a suit would lie against the heirs of Glasscock. The federal courts follow the practice of the states respectively, where congress has not otherwise provided. Perkins v. Watertown, 5 Biss., 320; Peeler's Law & Equity in U. S. Courts, 371–2; U. S. R. S., sec. 914; and see Sawin v. Kenny, 93 U. S., 289. Accordingly, the United States having reserved its remedy against Glasscock's heirs, could maintain an action against them subsequently to the discontinuance, as to their ancestor.

Under the rules and principles of law which we have presented, we think that the judgment of the court below is contrary to the law of the case, because the evidence does not warrant the verdict that was rendered. The judgment, therefore, must be reversed.

REVERSED AND REMANDED.

[Opinion adopted June 28, 1884.]

Associate Justice WEST did not sit in this case.