WhbeleR, J.
The inquiry presented by the assignment of error is, did the title to the property purchased by tlie husband during the marriage with tlie money which he received from the sale of his patrimony vest in him as his separate property, or did it accrue to the community?
In the case of Scott & Solomon v. Maynard and Wife, (Dallam, 548,) in reference to authorities upon the laws of Spain cited in their opinion, the court say: “ From an examination of these authorities we are justified in concluding that, under the Spanish laws, property acquired during marriage by purchase, whether the acquisition be made in the joint name of husband and wife, or of either of them separately, must be considered as common property; and that if there be any exception to this general rule, it must be established by certain and positive evidence, or otherwise the presumption that the property is common will remain in all its force unimpaired.”
In the case of McIntyre v. Chappell, (4 Tex. R.) we quoted the language of the Supreme Court of Louisiana, (1 La. R., 522,) to the effect, that by the Spanish law everything purchased during the marriage fell into the common stock of gains, whether purchased with the money of tlie community or that of either husband or wife. But to this rule there were exceptions, (ib.) The rigor of the rule, it was said, is applicable only to purchases, and does not necessarily include things which may be received by either husband or wife in payment of money due to them in their separate and individual rights. (Ib.) Therefore, property conveyed to the husband in payment of a sum of money inherited by the wife was held to be the paraphernal property of the wife. (Ib.)
The language of the court in the case'last cited does seem to favor the supposition that, in the ease of a purchase, though with the separate property of either husband or wife, the property acquired became community property. But such, it seems, was not invariably tlie rule. In Ducrest’s Heirs v. Bijean’s Estate, (8 Mart. N. S., 192,) it was held that, by the laws of Spain, if the money which the wife brought into the
marriage, whether dotal or paraphernal, was employed in the acquisition of an immovable, (as slaves,) the property became hers. (Id., 197.) And in Borie, F. W. C., v. Borie, F. M. C., (5 La. R., 89,) the court said: “It is true that by the Spanish jurisprudence and laws property purchased by the husband with the money of the wife became hers.” In the case of Terrell v. Cutrer, (1 Rob. R., 367,) of an adjudged case in 17La. R., (to which we have not access,) the court say : “In that case we held that when tlie wife retains the administration of her paraphernal estate, and the title is taken in her name, either as a purchase with the funds which she administers without the assistance of her husband, or as a dation en payement made to her by a debtor of a separate and paraphernal claim, the property thus acquired remains paraphernal, and does not fall into the community of acquests et gains. We readily admit that the subject is not free from difficulties growing out of the very general dispositions of the law applicable to such cases. The wife’s right to sell or otherwise alienate, and to administer her parapher-nal property, is clear. Her right to reinvest the proceeds of her property thus disposed of would seem to be but a corollary from that principle.” (Id., 368, 369.) Again, in Smally v. Lawrence, (9 Rob. R., 214,) the court say: “The land was purchased during the existence of the community; and although tlie receipts or certificates are in the name of the wife, still tlie property as much belongs to the community as if it stood in the name of the husband, unless she can prove that the purchases were made with her own money, or the property given in payment of a debt owing to her in her own right.”
From these cases it seems clear that property purchased with the separate or individual money of either husband or wife does not necessarily belong to the community. From the language of tlie court in the case last cited, it is to be. inferred that, “if the wife can prove that the purchases were made with her own money, or the property given in payment of a debt owing to her in *6 her own right,” the property, if an immovable, would not belong to the community.
Note 2. — Huston a. Curl, 8 T., 239; Rose a. Houston, 11 T., 324; Chapman a. Allen, 15 T., 278; Smith a.Strahan, 16 T.,314; Dunham «.Chatham, 21 T.,231; Story a. Marshall, 24 T.,306; Smith a. Strahan, 25 T., 103; Cooke a. Bromond. 27 T., 457; Smith v. Boquet, 27 T., 607; Hatehott v. Conner, 30 T., 104; Tucker V. Carr, 39 T., 102; Johnson a. Burford, 39 T., 342.
Accordingly, in McIntyre v. Chappell, we held that negroes received by the husband during the marriage, in discharge of a debt due him for property which he had sold previous to the marriage, were his separate property, it is difficult to perceive any real distinction between this case and that. In the case of a purchase made during the marriage, it will, in general, be more diüicult to prove the individual ownership of the money, from what source it was derived, and whose money was really employed in making the acquisition, than in the case of the mere exchange of one article for another. A greater burden of proof will devolve on the claimant. The presumption that property purchased during the marriage was community property would certainly be very cogent, and would require''to be repelled by olear and conclusive proof. But when it is established, as in this case, clearly and conclusively, that the property was purchased wilh the separate money of one of the parties, no reason is perceived why it should have a destination different from that of property received in payment of a debt due the party, or why it should not remain in' the one case as well as in the other, the separate property of the party with whose money it was purchased. Why should not the property purchased with the proceeds of the patrimony receive the same direction as property received in lien of those proceeds?
Whatever difficulties the question may present, “owing to the general dispositions of the law applicable to such cases,” in principle and reason there can be no difference in the cases and no difficulty in the question. Equity and justice require that the property in each case should have the same destination.
We are accordingly of opinion that the negroes purchased with the money which the husband received from the sale of his patrimony, to the extent of that money invested, did not belong to the community, but were his separate property; consequently, that the negro Peter was his separate property, and that he had an interest distinct from the community in tiie value of the negro Finn, proportionate to that part of the price paid with his money; the widow having a community of interest in the negro, and his hire since the death of the intestate, proportionate to that part of his price not so paid. The remainder of his price, due at the time of the dissolution of the marriage, remained a claim against the community; having been given to the heir by the holder, the half of it chargeable to the heir’s interest in the community was extinguished, and the remaining half is chargeable to the widow’s interest in the community.
We are of opinion, therefore, that the court erred in adjudging the negro Finn and his hire to the heir. The widow, as we have seen, had a community of interest in a part of his value and hire, which the court should have ascertained and adjudged to her, and, if found necessary to a proper distribution of the respective interests of the parties, should have directed a sale of the negro.
Wo are of opinion, therefore, that the judgment be reversed; and, as we have not the facts before us necessary to a final disposition of the case, it must he remanded for further proceedings.
Judgment reversed.