JAMES KING ET AL. v. JAMES GILLELAND ET AL.

(Case No. 1461–4491.)

1. HOMESTEAD — SEPARATE PROPERTY. — While under art. XVI, sec. 52, of the constitution of 1876, the property on which the homestead is established, if paid for with the separate means of the wife, descends and vests on the death of both spouses exclusively in her children, who, after ceasing to live on the place, are entitled to its possession, freed from any homestead right asserted by a surviving widow of a second marriage with the father, yet the evidence of its having been paid for with the separate means of the wife must be clear and satisfactory.

2. EVIDENCE. — Whilst the evidence of such investment of separate means is not required to be so conclusive as to preclude a reasonable doubt, yet nothing must be left to conjecture; nor can presumptions be indulged which are not the usual and almost necessary deductions from the facts proved.

3. FACT CASE. — See opinion for facts held not sufficient to show the acquisition of property with separate means of the wife.

APPEAL from Parker.   Tried below before the Hon. A. J. Hood.

*I. W. Roach*, for appellants.

*Shannon & Moran*, for appellees.

WILLIE, CHIEF JUSTICE.— The appellees brought this suit to re-
cover of the appellants eighty acres of land alleged to have been the
separate property of Mrs. Missouri A. King, deceased; they claim-
ing to be her only surviving children, and the only heirs of herself,
and of a deceased brother, who, during his life-time, had inherited a
child's share from her.

Mrs. Missouri A. King intermarried, early in 1857, with W. T.
King, and of that marriage were born the appellees and their said
deceased brother, and the tract of land in controversy was pur-
chased during that marriage, but not paid for until after it was dis-
solved by the death of Mrs. Missouri King, which occurred in 1867.
W. T. King married a second time, his last wife being Mrs. Mary
Ann King, one of the appellants in this cause, and of this marriage
four children were born, two of whom died in infancy, and the other
two are also appellants herein.

W. T. King departed this life during the continuance of the mar-
ital relation with his second wife, and she subsequently intermarried
with James King, who for that reason was joined with her as a de-
fendant in the court below.

W. T. King, his second wife, and the children of both marriages
occupied the land in controversy as part of their homestead from
the date of his second marriage down to his death.   Subsequently
his widow and said children occupied it as a homestead, until within
a short time before this suit was commenced, when the children of
the first marriage having left the place, Mrs. King and her second
husband and the children of her marriage with W. T. King con-
tinued in possession of the land, claiming it as a homestead; and
such was the condition of matters when this suit was brought.

The appellees claimed that the land was paid for with the separate
means of Mrs. Missouri A. King, deceased, and that, upon the death
of their father, there was nothing to which a homestead right in the
land could attach for the benefit of the widow and children of his
second marriage, and appellees were entitled to the possession of
the property.   If their premise as to the manner in which the land
was acquired was correct, their conclusions legally and necessarily
followed.    Const. 1876, art. XVI, sec. 52; Gilliam *v.* Null, 58 Tex.,
298; Pressley's Heirs *v.* Robinson, 57 Tex., 453.

The burden of proof was upon the appellees to show that the separate property of their mother paid for the land in controversy, and the following is about the substance of the evidence introduced by them to establish that fact: At the date of the marriage of W. T. and Missouri King, he owned only a horse and yoke of oxen, and she only seven to ten head of cattle, worth fifteen or eighteen dollars per head. Within a few months after their marriage he jointly with another bought from one Boggs the latter's interest in one hundred and sixty acres of land for $60. They owned no home at the time, and Mrs. King was heard to say, in reference to her cattle, which were all then in a pen at the place where she was living, that she intended to sell them and buy her a home, as she was tired of being without one. Two witnesses who heard this say that they never knew her to have any cattle afterwards. It was also proved that before the patent issued to the Boggs survey, King sold three cows belonging to Mrs. King, and said to a witness that he was getting up money to pay for a patent on the land, and that he did pay for the patent, but with what money the witness did not know. This land was upon the Mississippi reservation, and the claimants of it, who had bought out Boggs' settlement, were required to pay fifty cents per acre to obtain a patent. The horse and oxen owned by King before marriage did not enter into the consideration paid for the land, as was fully proven. King and wife lived on the Boggs land till 1866, when he and his co-tenant sold it to Branley, it would seem for $1,000. Part of the money was paid to King in a horse and wagon worth $175, and part in another horse and wagon worth $225, to his co-tenant, and for $500 Branley executed his note. How the balance was paid does not appear. In 1867 King and Robertson (the latter King's co-tenant and joint purchaser of the Boggs land) bought together the one hundred and sixty acres of land from one Canafax for $1,000. Of this amount $200 were paid in cash, $175 in King's horse and wagon, and $225 in Robertson's horse and wagon, both received for part of the purchase money of the Boggs survey. The balance was paid sometime thereafter with the note of Branley, received in part payment of that tract of land, which note had been reduced by payment to about $400. When King sold the Boggs land, viz., in 1866, he removed with his family to another place owned by him, and whilst there Missouri King died in 1867. During the latter year, and four or five months before the death of his wife, he bought the Canafax tract, and the payments were made at different times from the date of purchase down to 1869. At the time King bought the Canafax land some of the

witnesses think he had no means except the proceeds of the Boggs tract and some few horses and cattle, and some other personal property, but it was not known whether or not he had money.

On the part of the defense it was proved that King, before he made the last payment upon the land, sold some steers for $100 and took the money ostensibly for the purpose of paying Canafax on the land, and that these steers belonged to King before his second marriage. It was also proved that he raised $40 more for the same purpose, which was not the separate money of his first wife.

These are about the most important facts bearing upon the purchase of the land and the manner in which it was paid for. Upon this proof the jury found that the entire purchase money of the land in controversy was paid with the separate means of Missouri King, and a decree was accordingly rendered that the appellees recover the whole tract claimed by them in the suit.

The assignments of error relied on here bring before us the question as to whether or not this evidence is sufficient to warrant the finding of the jury. Not only was the burden of proof upon the plaintiffs below to trace the separate means of the wife into the purchase of the land, as we have stated, but the law requires that this shall be done by clear and satisfactory evidence. Love v. Robertson, 7 Tex., 6; Huston v. Curl, 8 Tex., 239; Schmeltz v. Garey et al., 49 Tex., 49; Mitchell v. Marr, 26 Tex., 329.

Perhaps there is no fact which, in the trial of civil causes, is required to be so satisfactorily proved as that which engrafts a parol trust upon the legal title. 1 Perry on Trusts, sec. 136, and authorities just cited.

Whilst it is not necessary that it should be established beyond a reasonable doubt, nothing must be left to conjecture, nor must presumptions be indulged which are not the usual and almost necessary deductions from the facts proved.

After a great length of time has elapsed, and parties have held possession of the land for years under the legal title without question, and the witnesses who might have established their right to such possession beyond all controversy are dead, they should not be readily disturbed by evidence within the knowledge of living witnesses which raises a presumption in favor of the trust, when, if deceased witnesses could be heard to speak, such presumption might be easily rebutted.

In the present case, it was clearly shown that Mrs. King owned a few cattle, and W. T. King a horse and yoke of oxen when they were married. That neither the horse nor the oxen entered into the

purchase of the Boggs land was clearly shown; and whilst the presumption is strong that the cattle of the wife went towards paying for the land, that presumption was not a necessary conclusion from the fact that these cattle were sold about the time of the purchase. That one or more witnesses knew of no other personal property owned by him is not conclusive that he was destitute of it; and he must have had other property or money at some time which was unknown to the witnesses or he could not have bought the Saunders tract, which he seems to have acquired whilst in possession of the Boggs land.

The extent of one's money or other property, and especially the former, is not always known to his neighbors; and, because they are not aware of it, the conclusion is not certain that he does not possess it. But, admitting that the absence of any witness to show that the deceased, King, had other means, or used the proceeds of his wife's cattle for one purpose and his own money to buy the land, and that the purchase of the Boggs tract with Missouri King's separate property was sufficiently established, there is a clear lack of evidence to show that the interest of King in the Canafax land was wholly paid for with the separate means of his first wife. Of the consideration received by him for the land sold to Branley, the proof sufficiently shows that he invested about $375 in the Canafax tract, viz., $175, the value of a horse and wagon, and his one-half interest in Branley's, presumably $200. There is not only a total lack of proof to show that the remaining $125 was paid with the purchase money of the Boggs land, but the evidence is persuasive that it was paid partly with money realized by King from the sale of beef steers, his separate property, or community property of his first marriage, and with money raised by him by collection and loan for this very purpose. If only $375 of the purchase money was paid with the separate property of Mrs. Missouri King, the appellants certainly had some interest in the land, as surviving wife and children of his second marriage, to which the homestead right would attach. That interest would bear the same ratio to the whole tract that their father's interest in the money paid for it bore to the whole amount of the consideration paid, and to that extent at least the plaintiffs were not entitled to recover. Love v. Robertson, 7 Tex., 6; Claiborne v. Tanner, 18 Tex., 68; Battle v. John, 49 Tex., 202.

But the verdict of the jury gave the entire land to the appellees and judgment was rendered accordingly. We think that the verdict in part was wholly unsupported by evidence, as already shown, and

the proof that the whole purchase money of the Boggs land was paid with the separate property of Mrs. King was not entirely satisfactory. Whilst we might not have disturbed the judgment on the latter ground alone, we think upon the former it was clearly erroneous, and the judgment must be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered November 2, 1883.]