TEXAS MOLINE PLOW COMPANY ET AL. v. KINGMAN TEXAS
IMPLEMENT COMPANY ET AL.

Decided April 29, 1903.

**1.—Chattel Mortgage—Reservation of Title.**

A reservation of title in goods sold, made in order to secure the purchase price to the seller, is, under the statute, but a chattel mortgage, and subject to the laws governing such instruments. Rev. Stats., art. 3327.

**2.—Trust—Equitable Lien on Proceeds—Intermingling—Identification Necessary—Trustee in Bankruptcy.**

H. bought goods from different parties under contracts stipulating that the title was reserved in the seller and that if the buyer sold the goods, the proceeds of such sales, whether cash, book account or notes, were to be held as the property of the seller as collateral security for his benefit and subject to his order until the contract price was fully paid. H. failed and went into bankruptcy. The evidence showed that he had never kept any separate account of sales, but that the proceeds of all goods sold went into the general business. In a contest between the trustee in bankruptcy and the lien creditors above mentioned the latter identified some of the goods sold by them as having been on hand at the time of the failure, and they further sought to enforce a trust and equitable lien upon the proceeds of the remainder of the general stock because of the investment of trust funds therein. Held, as to such further claim, that there was no such identification of any particular goods in which trust funds had been invested, or of the proceeds thereof, as would authorize such enforcement of the trust, and that the trustee held the proceeds of the stock not identified in trust for the general creditors, including such claimants.

Appeal from the District Court of Dallas. Tried below before Hon. T. F. Nash.

*Hall & Flippen, F. D. Cosby, Geo. H. Plowman,* and *Etheridge & Baker,* for appellants.

*McCormick & Spence,* for appellees.

FLY, ASSOCIATE JUSTICE.—The Kingman Texas Implement Company instituted suit against W. L. Hutcheson, J. H. Wright, Joseph Nugent and Joseph Edwards to recover of Hutcheson the sum of $3138, all of

the debt being in the shape of notes, except the sum of $410.40 owed on an open account. It was alleged that the notes had been given for certain plows, buggies and agricultural implements sold by the plaintiff to Hutcheson under the following written agreement:

"It is expressly agreed that the title to and ownership of all goods shipped under this contract shall remain vested in the Kingman Texas Implement Company, unless at their option it shall be expressly waived in writing. And the goods are to be held at all times subject to their order until paid for. If sales are made before payment, they shall be made only in the regular course of business, and the proceeds of such sales, whether cash, book account or notes, are to be held as the property of the Kingman Texas Implement Company in trust as collateral security for their benefit and subject to their order until all obligations provided for in this contract or arising therefrom are full paid in money, or until full payment is made at the net prices herein specified. But nothing in this clause shall release the undersigned purchaser from making the payments as above stipulated. It is further agreed that notes taken by the Kingman Texas Implement Company are not accepted as payment or a novation or waiver of this contract."

It was alleged that the agreements were in effect chattel mortgages, which had been duly registered, and that Hutcheson had sold all the goods, except eight buggies and one or two plows, and had received in payment for them the sum of $3000 in money and promissory notes, which he had used in replenishing his stock of goods, and that thereby the plaintiff became entitled to a lien on the stock of goods for the payment of the indebtedness of Hutcheson. It was further alleged in amended pleadings that since the institution of the suit a receiver had been appointed who had sold the goods and deposited them in the registry of the court. Also that since the institution of the suit, J. H. Wright had been appointed trustee in bankruptcy of W. F. Hutcheson, and had intervened in the suit.

The Texas Moline Plow Company, Keating Implement and Machine Company, Emerson Manufacturing Company and T. H. Smith & Co. intervened in the suit, setting up claims similar to that of the plaintiff, and J. H. Wright set up in his plea of intervention that he was entitled to the goods as the trustee in bankruptcy of W. L. Hutcheson. Joseph Linz & Brothers and Hibbard, Spencer, Bartlett & Co. also intervened setting up claims against Hutcheson. Hutcheson filed general and special exceptions and general denials, and pleaded the bankruptcy proceedings in bar of the suit and interventions. Hibbard, Spencer, Bartlett & Company and Joseph Linz & Brothers had their intervention dismissed for failure to prosecute, and the Kingman Texas Implement Company dismissed its suit as to J. H. Wright, Joseph Edwards and Joseph Nugent, and the cause went to the jury as between the Kingman Texas Implement Company, plaintiff, and W. L. Hutcheson, defendant, and J. H. Wright, trustee in bankruptcy, Texas Moline Plow Company, Keating Imple-

ment and Machine Compeny, Emerson Manufacturing Company, and T. & H. Smith Company, as interveners. The jury returned the following verdict:

"We, the jury, find for plaintiff, Kingman Texas Implement Co., $3463.74; intervener Texas Moline Plow Co., $5439.55; intervener Keating Impl. & Mach. Co., $2351.70; intervener Emerson Mfg. Co., $1970.40; intervener T. & H. Smith Co., $675.80; as against defendant Hutcheson.

"We further find for pltff. Kingman Texas Impl. Co., $254.50; intervener Keating Impl. & Mach. Co., $83.50; intervener T. & H. Smith Co., $260.00; foreclosing their liens upon the funds in the registry of this court.

"We further find for pltff. Kingman Texas Impl. Co. a foreclosure of their lien on the balance of said funds remaining in the registry of this court."

The judgment followed the verdict in its terms.

The evidence disclosed that merchandise was sold to Hutcheson by the plaintiff in the court below, and by each of the interveners, and that each of them retained what amounted to a chattel mortgage on its goods. It was agreed between the trustee and the claimants that the proceeds of goods identified which were sold by the receiver should be paid to the respective owners. The testimony of W. L. Hutcheson, which was in nowise controverted, was to the effect that the different lots of goods bought by him from the different owners were sold, with the exception above mentioned, and the amounts realized therefrom used indiscriminately in his business. He kept no separate account of what was done with the proceeds of any particular goods. He sold $2800 or $2900 worth of the goods that he bought from the Kingman Texas Implement Company and used the proceeds in paying freight and the expenses of the business. The proceeds of all sales went into the general fund. Hutcheson testified: "Practically all the money that was paid out during 1901 was paid out on purchases made prior to May 1, or prior to January 1, 1901. The $4600 worth of goods on hand at the time of the failure either were not paid for, or were paid for long prior to January 1, 1901." The Kingman Texas Implement Company sold their goods to Hutcheson during the year 1901, and he used none of the proceeds of those goods in purchasing any of the goods that were taken possession of and sold by the receiver, appointed at the instance of the plaintiff in the court below. Hutcheson had no money on hand when he failed.

It is the contention in this case that under the terms of the different contracts made by Hutcheson with the vendors of the goods, a trust was created upon the property sold or its proceeds, and that the vendors have a lien on the property or its proceeds. It is a settled principle of equity when one is intrusted with the money or other property of another and invests the trust money in property, or exchanges the trust

property for other property, or sells it for money, the property so obtained for the trust fund or the money can be followed by the cestui que trust, and he can fix upon it the character of the original property. This doctrine has for its basis the fact that the money or other property is the property of the cestui que trust, and so long as he can clearly and distinctly trace his property through its mutations, he will in equity be entitled to it. The doctrine is thus stated in the case of Cavin v. Gleason, 105 N. Y., 262: "If it appears that trust property specifically belonging to the trust is included in the assets, the court doubtless may order it to be restored to the trust. So also, if it appears that trust property has been wrongfully converted by the trustee, and constitutes, although in a changed form, a part of the assets, it would seem to be equitable, and in accordance with equitable principles, that the things into which the trust property has been changed should, if required, be set apart for the trust, or, if separation is impossible, that priority of lien should be adjudged in favor of the trust estate for the value of the trust property or funds or proceeds of the trust property entering into and constituting a part of the assets. This rule simply asserts the right of the true owner to his own property. But it is the general rule, as well in a court of equity as in a court of law, that in order to follow trust funds and subject them to the operation of the trust, they must be identified."

On the question of the extent to which the identification of the property must go, there has been some diversity of opinion, Missouri, Kansas and the earlier New York cases holding that it is not necessary to trace the trust fund into some specific property, but it is sufficient to trace it into the estate of the defaulting agent or trustee; while in other States in which the question has been discussed, it is held as stated in 2 Pom. Eq. Jur., sec. 1058: "No change in the form of the trust property, effected by the trustee, will impede the rights of the beneficial owner to reach it, and to compel its transfer, provided it can be identified as a distinct fund, and is not so mingled up with other moneys or property that it can no longer be specially separated."

These divergent rulings are fully discussed in the case of Philadelphia National Bank v. Dowd, 38 Fed. Rep., 172, and the difference in the two rules is stated to be that, under the rule first above set out, which is the one followed in McLeod v. Evans (Wis.), 28 N. W. Rep., 173, the trust fund exists if it can be traced into the estate of the defaulting agent or trustee, or has been used in paying his debts; while according to the latter, or Pomeroy rule, the trust fund must be traced into some specific property. In the case cited the Texas case of Bank v. Weems, 69 Texas, 489, is reviewed and criticised, and it is said that the only difference between it and the Wisconsin case is that the latter "gives to a cestui que trust whose funds have been wrongfully converted by an insolvent bank an equitable lien on the entire assets of the bank, while the Texas case gives such a lien only upon the cash coming to the re-

ceiver, and only, at least to the whole extent of the trust money, in case such money was never reduced below the amount of the trust fund." We do not understand that the Weems case goes to the extent of the Wisconsin case, for it is held in the Weems case that "the true rule is that the trust estate must be clearly traced into other specific property, in order that the cestui que trust may claim either the property itself or a lien upon it." To make the position of the court perfectly clear on the matter the decisions in regard to the right of the wife to follow the proceeds of her separate property in its mutations in the hands of her husband, are referred to as containing the rule to be applied to a case like the one under consideration. In those cases it is held that "nothing must be left to conjecture, nor must presumptions be indulged which are not the usual and almost necessary deductions from the facts proved;" and that "where the separate property of the wife has undergone mutations, it is indispensable, in order to maintain its separate character, that it be clearly and indisputably traced and identified." King v. Gilleland, 60 Texas, 271; Glasscock v. Hamilton, 62 Texas, 143.

The most that is established by the evidence in this case as to the property of any of the claimants is that the property was sold and the proceeds used in paying debts that had been incurred by Hutcheson. Not a dollar of the proceeds was traced into any specific property. We are clearly of the opinion that such proof did not give a trust character to the property of the debtor. The payment of the debts did not increase his assets nor decrease his liabilities. In paying the debts he merely preferred one creditor over another, and his own estate and indebtedness remain in exactly the same state that they did before. Commissioners v. Wilkinson (Mich.), 44 Law. Rep. Ann., 493; Bank v. Insurance Co., 104 U. S., 54.

The rule as to the identification of the estate of one spouse that has been commingled with that of the other is fully discussed in the case of Moor v. Moor, 24 Texas Civ. App., 150, 57 S. W. Rep., 992, and therein the following language from Robb v. Robb, 41 S. W. Rep., 92, is quoted with approval: "When the husband mingles his separate estate with the community beyond identification, he can not charge the community with the value of the property so mingled; and all property in possession of husband and wife is presumed to be community property, and this presumption must obtain until it is shown unmistakably that the property, or some part of it, was owned by one of the spouses previous to and at the time of the marriage, or was acquired subsequently by one of them by gift or devise or inheritance, or purchased with the separate money or property of one of them."

The burden of impressing a trust character upon the property rested upon the plaintiff and interveners, and if it should be held that the rigidity of the rule laid down in the case of King v. Gilleland and Glasscock v. Hamilton, above cited, has been modified by the decisions in Mitchell v. Mitchell, 80 Texas, 101, and 84 Texas, 305, so as to require a

less degree of proof, still the evidence in this case falls short of the mark. It was not shown by a preponderance of the evidence that the money obtained for the goods of plaintiff or either intervener entered into payment of any of the goods, and none of them were identified except those about which there is no controversy.

The claims to the goods must be based on some right of property in the proceeds of the goods that had been sold by Hutcheson and invested in those taken possession of by the receiver, and the question of registration would cut no figure in the proper disposition of the cause. The right of each one would arise from and be dependent on the fact that Hutcheson sold its goods and had bought other property with them which was on hand, and the fact of registration of the papers evidencing the right in the property could in no manner affect the question of ownership, and we conclude, under the proof, that, neither of the claimants having traced its property into that in controversy, neither is entitled to preference over the other or any other creditor of Hutcheson.

Under the decisions in Texas a mortgage is declared to be merely security for a debt and the title to the property remains in the mortgagor. Willis v. Moore, 59 Texas, 628. The instruments under which the different parties claim are declared by the statute (Rev. Stats., art. 3327) to be chattel mortgages and subject to the laws governing such instruments. In other words the title to the property of each of the claimants passed to Hutcheson, and he became the owner thereof as much so as though he had paid the purchase price therefor, and being his property the claimants can have no ownership therein, their only interest being that the property had been mortgaged to them to secure their debt, and that although the legal lien has failed by reason of the property having been sold, a trust is impressed on the proceeds therefrom. In order to fix a trust in the goods, it is essential that the property should be capable of identification so that it may appear with reasonable certainty what property it is that is subject to the trust. An equitable lien, like a legal lien, must fasten on certain specific property, and technically could have no more application in this case than could a legal lien, because the property on which it depends for existence has been destroyed. The claims, if any, must arise from the law of trusts, and must be predicated on the fiduciary relationship existing between the parties.

It does not matter, however, whether it is an equitable lien or a trust that is sought to be impressed upon the property, for in each case the degree of proof required is the same and the same identification demanded.

It follows that under the facts that appear in the record there was no basis for a finding in favor of the Kingman Texas Implement Company, and that the proceeds of the property should have been awarded to the trustee in bankruptcy, in trust for the general creditors of the bankrupt.

That part of the judgment as to Hibbard, Spencer, Bartlett & Co., Joseph Linz & Brothers, Joseph Edwards, Joseph Nugent, and that part giving judgment for the plaintiff in each of the interveners against W. L. Hutcheson for their respective debts, and that part relating to identified property as agreed upon by the parties, will be affirmed; but that part of the judgment giving a preference lien on the proceeds of the property to the Kingman Texas Implement Company is reversed and the cause remanded.

*Affirmed in part; reversed and remanded in part.*