**BROOKS et al. v. CHERRY et al.** (No. 1579.)*

Court of Civil Appeals of Texas. Beaumont. July 13, 1927.

Rehearing Denied Sept. 21, 1927.

1. **Injunction** ⊙�longrightarrow147—Evidence in stockholders' suit against manager to establish constructive trust in property claimed to have been misappropriated held insufficient as matter of law for temporary injunction.

In suit by stockholders of corporation against manager owning controlling stock interest therein to establish a trust in property owned by such manager and his wife on theory that property was obtained by misappropriating property of corporation to personal use, and therefore constituted a constructive trust, evidence *held* insufficient as a matter of law to authorize temporary injunction against disposal or removal thereof.

2. **Trusts** ⊙�longrightarrow371(2)—Complainant to establish and enforce constructive trust must identify and trace trust fund into specific property.

In a suit to establish and enforce a constructive trust, complainant must be able to identify trust fund, and trace the same into specific property, and identify it as having been purchased by trust fund.

Appeal from District Court, Jefferson County; Geo. C. O'Brien, Judge.

Suit by Ed Cherry and others against T. D. Brooks and others. From a judgment granting a temporary injunction, defendants appeal. Reversed, and injunction dissolved.

King & Jackson and Howth, Adams & Hart, all of Beaumont, for appellants.

E. E. Easterling and W. D. Gordon, both of Beaumont, for appellees.

WALKER, J. This suit was filed in the Fifty-Eighth district court of Jefferson county, Tex., by Ed Cherry, J. S. Edwards, W. D. Gordon, J. T. Shelby, and Mrs. Carrie A. Little, a feme sole, against T. D. Brooks and his wife, Mrs. Pearl Brooks, all the parties named being resident citizens of Jefferson county, and the Brooks Supply Company, a corporation with its principal office and place of business in Jefferson county, Tex., and the Texas National Bank; First National Bank, the City National Bank, American National Bank, all corporations doing business in Jefferson county, Tex. In substance, plaintiffs alleged:

(1) In August, 1916, T. D. Brooks and W. D. Gordon formed a partnership to deal in oil well supply machinery, with a working capital of $10,000, furnished by W. D. Gordon. Brooks was to devote all his time to the business of the partnership, and, "after the capital had been paid back through earnings of the partnership, Brooks was to have a one-third interest and Gordon a two-thirds interest in the partnership assets." The partnership was very prosperous. In the year 1917, the partners incorporated their business under the name of Brooks Supply Company, with a capital stock of 250 shares, each of the par value of $100. Of this stock, Gordon took $10,000, Brooks $5,000, and the balance was sold to other parties. The first report of the business on August 24, 1917, showed a surplus above the capital stock of $16,799.44.

(2) The business of the corporation continued prosperous, showing by the report of the auditor of August, 1918, a surplus of $38,235.77. The auditor's report of November, 1917, showed a surplus of $37,012.02. Up to August 10, 1920, cash dividends were paid by the corporation to the stockholders to the amount of 80 per cent. of the capital stock. On that date the capital stock was increased to $75,000, and the stockholders were given the increased capital as a stock dividend of 200 per cent.; the capital stock remaining at that amount.

(3) Before the increase of capital stock, T. D. Brooks acquired 145 additional shares of the capital stock, including the stock of Gordon, by paying the holders from $250 to $275 per share therefor. With his wife and her nephew, T. D. Brooks, owned a majority of the stock. In 1925, Gordon, who had not owned any of the stock since he sold his interest in 1920, bought 161 shares of the capital stock from J. L. Cunningham, and at that time the minority stockholders were Gordon 161 shares, Cherry 50 shares, Edwards 10 shares, Little 30 shares, Shelby 15 shares. After Brooks acquired the controlling interest, the corporation paid no further dividends, though its business opportunities were good and business was vastly extended. "The statement rendered of its business for the year ending December 31, 1926, as shown to its shareholders in their annual meeting on February 25, 1927, shows: That it has cash in the banks amounting to $27.11, distributed among three of the leading banks of Beaumont, to wit, the Texas National, the American National, and First National Banks. That it is indebted in the sum of more than $50,000, which indebtedness does not include a recent judgment, affirmed in the Court of Civil Appeals at Waco, for over $4,200, and a claim which was recently put into a judgment amounting to some $9,000, in the district court of Jefferson county, Tex., but which judgment was set aside on a

⊙�longrightarrowFor other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction November 23, 1927.

technicality, and the cause now stands for retrial on the docket of that court. The resources of said company, as shown by said statement last named, are inadequate to meet the debts and liabilities which it admittedly owes; and, though doing a business for the year 1926, which was a banner year for all honestly conducted corporations of that nature and kind, amounting to $222,248.26, it shows a loss for that year of $1,994.56. A deficit appears in said last-named statement of $35,436.82, with total liabilities of $89,847.69. It thus appears, and so the fact is, that the corporation, tested by its books and accounts, is hopelessly and irretrievably insolvent, and that this condition has been brought about through the acts and conduct of the defendant, who is its managing president, and in conjunction with his wife, Pearl Brooks, in absolute control of the operations of said corporation through the ownership of more than one-half of its capital stock, and who run and handle the business as if it were their own exclusive business."

(4) Though the business paid no dividends, and though Brooks and wife had no other source of income than this business, they have accumulated a large estate, consisting of real estate, diamonds, etc. They have taken long and costly pleasure trips, bought and enjoyed fine automobiles, and spent money lavishly in many other ways. All the property bought and held by them was by funds abstracted from the assets of the Brooks Supply Company, which was accomplished in various ways, some of which are pleaded in detail. Part of the abstractions represent the excessive expense account of T. D. Brooks. "And in order to conceal these defalcations from other stockholders of said corporation and to hide this property against possible uncovering and recovery at the instance of said plaintiffs, he has opened in his wife's name various and sundry accounts with various and sundry banks in Beaumont, to wit, the Texas National, and First National, the City National Bank, and the American National Bank, and possibly other banks, and the money so belonging in equity and justice to said corporation and its stockholders has found its way into her accounts in these banks. And likewise, in order to further hide and conceal said appropriations, they have either in the name of T. D. Brooks or Mrs. Pearl Brooks, which your plaintiffs are unable definitely to state, obtained boxes in the vaults of these banks above stated, and these boxes are believed to contain cash and securities thus abstracted from the rightful owners, the Brooks Supply Company, through methods and means hereinbefore indicated, thereby making the same no longer available to the said corporation for the payment of its debts and the security of the investment of its stockholders, but for the exclusive use and benefit of the said T. D. Brooks and his wife, Pearl Brooks, to enable them to thus exploit and extend their own personal use and benefit from said earnings and to enlarge their own personal estate both real and chattel." T. D. Brooks sought to conceal his abstractions by putting the title to the real estate bought by him with such abstracted funds in the name of his wife. Plaintiffs described specifically eleven pieces of property which they say were purchased by such abstracted funds.

(5) T. D. Brooks and wife knew they had no income except from the Brooks Supply Company, yet hold in their name, which they claim as their separate property, a large estate. "Conscious of this, they have confederated together to conceal the same as far as possible by placing the same in her name and attempting to remove it from the reach of these stockholders suing here, and the creditors of said corporation; they being at all times in full and complete control since 1920 of the said corporation. Moreover, the said T. D. Brooks has on various and sundry occasions boasted that he was in fact worth $250,000."

(6) T. D. Brooks on various and sundry occasions has declared that no one having claims against him would be able to recover anything, "by reason of the fact that he had so arranged it as to place it beyond the power of such persons having such claims against him." In the annual meeting of February, 1927, the stockholders demanded an explanation of Brooks of the impoverished condition of the company as compared with his own financial condition, and that of his wife, but he "flatly refused to divulge the source of his apparent wealth and the company's impoverished condition."

(7) "And so it became evident and apparent that your plaintiffs in this suit have absolutely no recourse or remedy except to appeal to a court of equity in a bill to discover the truth and to enforce an accounting of these parties for all and singular the said sums of money so accumulated and appropriated by the said defendants, which in law and in equity belong of right to the said corporation, and to these shareholders in proportion to their interests, and to the creditors of said corporation."

(8) "Your plaintiffs respectfully show that the said T. D. Brooks was the only stockholder or party in interest in said corporation familiar with that business and capable of managing it in a way to produce profits; all other stockholders, especially these plaintiffs, being entirely unfamiliar with that character of business, and incapable of understanding the means and methods whereby profitable trading could be done in oil well supplies and machinery. Accordingly, the said Brooks, by reason of his wide acquaintance and experience in such matters, was conceded absolute control over the management, government, and direction of said corporation. And, from and after his acquisition of complete stock dominion and control as herein before stated, his reports to these stockholders explanatory of the nonpayment of dividends consisted in his representations that he was greatly extending the business of the company, and accumulating large surplus of stocks such as pipe machinery, and sundry oil well supplies, which he represented were taking the place of cash dividends, and that such policy was a wise business policy, pursued by him for the purpose of building up a large and profitable enterprise. In this manner he was enabled to lull into a sense of security these stockholders who relied upon such statements as being correct, and who thereby were led to believe that he was honestly building up large surplus in stock and supplies which he represented were being purchased at extremely low prices, out of which, he led your plaintiffs to believe, very large profits would ultimately be paid to them in dividends. And, in pursuance of these representations on his part, he specifically designated at various and sundry times covering the intervening years between 1920 and 1926 that the accumulations of

stocks on hand amounted to values in excess of $180,000. These statements and deceptions so practiced by the said Brooks were deliberately made for the purpose, as your plaintiffs verily believe and so charge, of allaying any dissatisfaction that might arise on account of the nonpayment of dividends, and were a part of the scheme and plan of the said Brooks to cover up and hide the actual facts as to his personal abstractions of the profits and assets of said corporation by secret, sundry, and devious means and methods whereby the business of said corporation, though actually earning large profits, was resulting in an impoverishment and destruction of the corporation's assets, and an enrichment of his own personal business and account both to himself and his wife, Pearl Brooks. It was through this method and scheme that your plaintiffs were led into a sense of security, relying upon the honesty and integrity of the said Brooks, and his constant representations to them that he was devoting all of his skill and energy to the common business in which they were all engaged as stockholders of said corporation. Thus and thereby the plaintiffs without their knowledge were being deprived by these methods of the honest and faithful services of the said Brooks on behalf of said corporation, and, through the covering up of these unfaithful machinations· of his, the profits and business assets intrusted to him as the manager, president, and practical dictator and controller of said corporation, resulted in the conversion of their property into his own personal estate, and appropriated to his own personal use and benefit, and that of his wife, Pearl Brooks. Hence, when a statement of the corporation's condition was rendered to the stockholders on the 25th day of February, 1927, it revealed the fact that the corporation had been stripped of its assets, and was in fact a mere shell of a business concern, hopelessly insolvent, while he and his wife, without resources other than such as reached them through this business, had become enriched as hereinbefore stated. And, upon being called to answer questions pertinent to these facts, the said Brooks declined to furnish any explanation of the source of the money so passing to him and his wife, and invested in large real estate interests in her name, and in valuable personal properties as hereinbefore indicated. And, when the suggestion was made to him in such meeting that the company was insolvent according to the statement he had rendered through his bookkeeper, while he and his wife were in opulent circumstances, and the inference was drawn that he had abstracted the funds of this company and should account therefor, he bluntly informed these plaintiffs present at said meeting that 'it was none of their business,' and that they would have 'a hell of a time' proving such facts as to his suggested misapplication of the company's funds."

(9) On the 1st of March, 1927, the corporation, Brooks Supply Company, filed a voluntary petition in bankruptcy, and one J. Zorn was appointed and immediately qualified as· receiver of the bankrupt and took possession. Plaintiffs sought and obtained the intervention of the receiver in this cause.

(10) Mrs. Pearl Brooks, in the bankruptcy schedule, listed a personal claim against the Brooks Supply Company. of $8,000, and T. D.

Brooks a personal claim of $7,000, both of which claims are denied. Instead of the Brooks Supply Company owing them certain sums of money, they are indebted to said corporation "for all sums of money now represented by their visible assets, both real and personal." It is further alleged: "That it is necessary to have an accounting to ascertain the extent to which such abstractions and misappropriations of the moneys and funds of said corporation to their own use and benefit in order to ascertain in detail such amounts as a predicate for the relief hereinafter prayed. Your plaintiffs, however, aver that all of the real estate now standing in their names, acquired by them or either of them since the incorporation of the Brooks Supply Company, is in truth and in fact held by them in trust by construction of law, for the said Brooks Supply Company, its creditors and stockholders, as well as all other moneys, securities, diamonds, and other expensive jewelry, automobiles, etc., to which they claim owner-. ship, and of which they have possession; each and all of which property as matter of fact stands charged with a constructive trust in favor of said corporation, and is equitably owned by it. Your plaintiffs are informed and believe, and upon such information and belief aver that the moneys standing in the names of T. D. and Pearl Brooks in each of said banks in Beaumont are constructively owned by the Brooks Supply Company, and in truth and in equity belong to it and its creditors and stockholders. They likewise aver, on information and belief, that in each of· the banks first above stated there are valuable securities consisting of cash and other evidences of wealth which are a part and parcel of the abstractions hereinbefore stated from the Brooks Supply Company, and in equity and right belong to said Brooks Supply Company, its creditors and stockholders."

(11) The petition concludes with a prayer for a temporary restraining order, as follows:

"First. That a temporary restraining order be immediately issued upon such terms and conditions as your honor may deem just and equitable, commanding and restraining the said T. D. Brooks and Pearl Brooks from in any wise taking or appropriating, selling, or disposing of any of said property hereinbefore described, real or personal, or transferring it or changing its status in any wise until the further order of this court, and that they and each of them be restrained and enjoined from withdrawing any of the funds in said banks, each and severally, standing in their names, and from entering said banks or any· of them and removing therefrom any of the contents of said lock boxes pending the further order of this court.

"Second. That each of said defendant banks made parties hereto for the purpose of this restraining order be enjoined and restrained from delivering, by payment to the order of said T. D. Brooks and Pearl Brooks or otherwise, any of the funds standing to their credit or either of them in said banks pending the further order of this court; and that they and each of them be restrained and enjoined from permitting the said T. D. Brooks or Pearl Brooks, or any one for· them, to enter said banks and open said safety deposit or lock boxes, and from permitting them in any wise to abstract or· withdraw the contents of said boxes or any of them pending the further order of this court.

"Third. That, upon a hearing hereof at such time and place as it may be suitable for your honor to further hear this cause, an injunction be granted, continuing in force and effect the temporary restraining orders above prayed for until the final determination of this cause.

"Fourth. That, upon a-final hearing of this case on its merits, an accounting be taken of the funds, moneys and other valuable properties appropriated and withdrawn by the said T. D. Brooks individually and in co-operation with his wife, Pearl Brooks, each and severally, and decree be rendered fixing and establishing its status in accordance with the averments of this petition; and that a judgment be rendered declaring that said property is constructively owned in truth and equity by the said Brooks Supply Company, and is subject to the claims of its creditors and stockholders here suing on its behalf, and such others as are similarly situated with them; and that an accounting be entered transmuting the apparent title from the said defendants, together with the possession thereof, to the said Brooks Supply Company and its authorized trustee or representative appointed by the bankruptcy court.

"Fifth. That, because of the malicious breach of the trust and confidence reposed by plaintiffs in the said T. D. Brooks, as hereinbefore stated, an order, judgment, and decree of the court be entered against him as exemplary damages recoverable for and on behalf of these complaining stockholders in the sum of $25,000, as exemplary damages for the wrongs committed against them at the hands of the said T. D. Brooks in the matters hereinbefore complained of.

"Sixth. And finally that such other and further relief be granted plaintiffs, and to the intervener representing the said Brooks Supply Company in bankruptcy, as the law and equity of this case may justify or authorize, whether herein specially prayed for or not, together with all costs of this proceeding, and as in duty bound they will ever pray."

Plaintiffs' petition was verified as follows:

"We, the undersigned plaintiffs in the above-entitled cause, have read the foregoing bill of complaint, and are familiar with its contents, and we here stated that the matters of fact stated as true are in manner and form true as therein stated, and, where stated upon information or belief, they are by us believed to be true."

On the 4th day of March, 1927, in chambers, the judge of the Fifty-Eighth district court of Jefferson county entered the following order:

"The foregoing petition being presented and duly considered, it is ordered that a temporary injunction be immediately issued by the clerk upon the complainants' giving bond in the sum of $5,000, conditioned as required by law to be approved by the clerk, directed to and against T. D. Brooks and Pearl Brooks, enjoining and restraining them from in any wise taking or appropriating, selling, or disposing of any of said property described in the petition in this case, real or personal, and from transferring it or changing its status in any wise until the further order of this court; and that they and each of them be restrained and enjoined from withdrawing any of the funds in the banks named in said petition, to wit, the Texas National Bank, the First National Bank, the American National Bank, and the City National Bank, in Beaumont, Tex., standing in the names of said defendants T. D. Brooks and wife, Mrs. Pearl Brooks, on the books of said banks, and. from entering said banks or any of them, and removing therefrom any of the contents of the lock boxes in said banks named in said petition, pending the further order of this court.

"It is further ordered that the said Texas National Bank, American National Bank, First National Bank, and City National Bank of Beaumont, Tex., be enjoined and restrained from delivering, by payment to the order of said T. D. Brooks and Pearl Brooks, or otherwise, any of the funds standing to their credit, or either of them, in said banks, pending the further order of this court, and that they and each of them be restrained and enjoined from permitting the said T. D. Brooks or Pearl Brooks, or any one for them, to enter said banks or any of them, and open said safety deposit or lock boxes, and from permitting them in any wise to abstract or withdraw the contents of said boxes or any of them pending the further order of this court.

"Done in chambers at Beaumont, Tex., March 4, 1927."

The petition was duly filed in the Fifty-Eighth district court on the 4th day of March. The bond required by the order was filed on the 4th day of March. On the same date J. Zorn, Jr., as receiver in bankruptcy of the Brooks Supply Company, joined in the petition, formally adopting the allegations of plaintiffs' petition without swearing to his petition. On the 4th of April, J. Zorn, Jr., filed an intervention in this cause as trustee of the Brooks Supply Company, alleging that he had been appointed such trustee on the 15th of March, and duly qualified on the 17th of March.

On the 5th of April, T. D. Brooks and Mrs. Pearl Brooks answered by motion to dissolve, pleading general and special demurrers and specially denying the allegations of plaintiffs' petition, and pleading further:

"That what property they had accumulated has been done legitimately on their own credit individually and upon their individual efforts, and none of it in any manner came from the Brooks Supply Company or had any connection therewith."

This answer concluded with the following prayer:

"Wherefore, defendants move and pray the court that the plaintiffs be given notice for the time and manner required by law, and that a hearing be had at the earliest possible convenience of this court to be designated by the courts and that upon said hearing the temporary injunction or restraining order, granted on the 4th day of March, 1927, be dissolved, that defendants' plea in abatement be sustained, and that, upon a final hearing hereof, the plaintiffs recover nothing, and the defendants go hence without day and recover their costs."

A hearing was had upon this motion, and on the 27th day of April, 1927, the following order was entered by the judge modifying the original order:

"On this day this cause came on to be heard upon motion presented by the defendants for a dissolution of an injunction issued by this court in chambers on the 4th day of March, 1927. And thereupon, after hearing the evidence and argument of counsel, and being duly advised, it is the order of this court that said motion be, and the same is hereby, overruled, except in so far as the same affects the personal property therein mentioned and as to said personal property the injunction is modified by eliminating the same from said order, and said injunction is dissolved as to the First National Bank and the Texas National Bank. There is excepted, however, from this modification a certain lock box in the Texas National Bank, as to which lock box the injunction heretofore issued is kept in force and effect, subject to the further orders of this court. To which action of the court the defendants T. D. Brooks and wife, Pearl Brooks, by counsel, in open court duly excepted, and gave notice of appeal to the Court of Civil Appeals for the Ninth Supreme Judicial District of Texas."

From this order the appellants have duly prosecuted their appeal.

Summarizing appellants' propositions, they say that the injunction should be dissolved for the following reasons:

(1) Plaintiffs' petition was bad on general demurrer.

(2) Plaintiffs, as minority stockholders, had no right to prosecute this suit, it appearing from the face of the petition that the corporation had been adjudged a bankrupt before the petition was filed.

(3) The plea of intervention of the receiver was insufficient, as not being verified.

(4) The plea of intervention of the trustee was insufficient, as not being verified.

(5) The verification of plaintiffs' petition was insufficient to sustain the injunction.

(6) The undisputed facts show that appellees were not entitled to the injunction.

Believing that the sixth proposition, as thus stated, is sound, we pretermit a discussion of the other propositions advanced.

From the statement of facts, we deduce the following conclusions:

(1) The assets of the partnership of Brooks and Gordon consisted of a note for $10,000 indorsed by Gordon, upon which the partnership realized $10,000. This note was repaid in full by the partnership before it was incorporated.

(2) The partnership was very prosperous, and at the time of its incorporation the partnership assets were of sufficient value to give Gordon $10,000 of the $25,000 stock and Brooks $5,000.

(3) To 1920, the corporation continued very prosperous, paying cash dividends to the amount of 80 per cent. of the capital stock and the 200 per cent. stock dividend, as alleged by plaintiffs.

(4) Gordon acquired the interest of J. L. Cunningham upon the date pleaded by plaintiffs, paying therefor 25 per cent. of its par value. He made this purchase at the request of T. D. Brooks and upon his representations that the business was prosperous.

(5) T. D. Brooks, as president and owner of the corporation, was its managing and directing head, but made annual and sometimes semiannual reports to his stockholders, having his books audited by certified accountants. In this connection and as a part of his report, he claimed to his stockholders that the business was prosperous, and that he was paying no dividends because he needed the assets to increase the business.

(6) From 1925 there were indications that the business was having financial troubles. In 1926, it was being sued and claims and judgments against it existed somewhat in the amounts alleged by plaintiffs in their petition.

(7) The business was adjudged bankrupt on March 1, 1927, at which time it was wholly insolvent.

(8) T. D. Brooks made representations to one of the plaintiffs, to wit, J. T. Shelby, shortly before or immediately after the bankruptcy of the Brooks Supply Company that he was worth $250,000. When called upon to explain the financial straits of the company and where and how he had acquired his personal estate, he declined to give any information.

(9) The plaintiffs had the books of the company audited subsequent to the bankruptcy, and on the report of this auditor Brooks' account with Brooks Supply Company was overdrawn $42,341.74. This item was explained by the auditor as follows:

"I have stated in reply to your questions this afternoon that, in arriving at my conclusions, shown in this report that I furnished Judge Gordon, that Brooks is indebted to the company in the sum of something over $42,000. I arrived at that by disallowing the traveling expenses which were credited to his account and by disallowing the bonus and by disallowing the 30 shares of stock and the dividends on it."

His examination further showed that he had charged back against Mr. Brooks his entire expense account from the inception of the business in 1916, though the books were audited repeatedly and these audits presented to the stockholders and approved by them. His explanation of this charge back against Brooks was that he found no formal order of the minutes fixing Brooks' salary and allowing him an expense account in addition to his salary. The thirty shares of stock referred to in his explanation was owned in fact by Brooks, but had not been transferred to him on the stock book of the corporation at the time the stock dividend was declared. Therefore this auditor, in his explanation,

said that the charge back of the 200 per cent. stock dividend on this stock was merely technical. This charge represented $9,000. He said, however, if, in fact, Brooks owned the stock, he was entitled to it. The bonus item was for $1,100, and had been charged on the books in Brooks' favor against the corporation for some time, and such books had been audited and this item had not been disallowed by the directors. The record does not fully explain why this bonus was claimed by Brooks. Taking the report of this auditor with the overdraft of $42,341.74, as explained by him, it is the conclusion of this court that all the items charged back against Brooks by this auditor were improperly charged, and, in fact, Brooks should be given credit for all such items, and, when that is done, this auditor admits that on the books of the corporation, as shown at the time of the bankruptcy, the corporation was indebted to Brooks.

(10) The evidence shows that Mr. and Mrs. Brooks had a personal estate of something like $10,000 at the time of the organization of the partnership between Brooks and Gordon; that this amount was constantly but slowly increased by savings from rent on property, by the personal activities of Mrs. Brooks, and by saving from Brooks' salary up to the time of the bankruptcy of the corporation. Beginning with the formation of the partnership, Brooks' salary was fixed at $150 per month. From time to time this was increased, until at the time of the bankruptcy Brooks was drawing a salary of $1,000 a month. Mrs. Brooks, as a witness, in detail, item by item, traced the title of all the property described in plaintiffs' petition, and explained in detail the consideration for such property and the sources from which such consideration was derived. On her statement, which is very lengthy, every dollar of the consideration that went into the purchase of this property was the honest accumulations by herself and her husband of a lifetime's service. The homestead, which was involved in the court's injunction, was owned by them before the formation of the partnership.

Each member of this court has carefully examined the statement of facts, and it is our conclusion that there is not one iota of evidence in the entire statement of facts, consisting of 201 pages, even suggesting that a dollar of the consideration for any of the property involved in the court's injunction was purchased by abstractions from the estate of the Brooks Supply Company. On the record before us, it appears that Mr. and Mrs. Brooks, giving a reasonable value to all the property listed in their names, are not worth in excess of $30,000. To establish the vast estate of $250,000, appellees rest upon the statement of T. D. Brooks to his banker, J. T. Shelby, that he was worth that amount. If this constitutes evidence of the value of the estate of T. D. Brooks and wife, we can-

not be mistaken in saying that there is not a scintilla of evidence showing that one cent of abstracted funds went into the purchase of any of the property now claimed by Brooks and wife, as described and listed in plaintiffs' petition, and in the testimony of Mrs. Brooks.

### Opinion.

[1, 2] On the foregoing conclusion of fact, it is our conclusion that the judgment of the court granting the temporary injunction is wholly without support in the evidence. In a suit to establish and enforce a constructive trust, it is the law of this state that the complainant must be able to identify the trust fund and trace the same into specific property and identify the same as having been purchased by the trust fund. As applied to the facts of this case, before appellees could have an injunction, restraining appellants from selling this property on the theory of a constructive trust, that it, on the theory that the property standing in their name was brought by the funds of the Brooks Supply Company, wrongfully abstracted by them, appellees rested under the burden of showing that this property was bought by funds so abstracted. It is the title to the abstracted funds that vests the equitable title to the property purchased with such funds in the owner of the funds so abstracted.

In Perry on Trusts, vol. 2, § 851, the author says:

"There may be some difficulty, as a matter of fact, in tracing the trust property into purchases made by trustees. Thus if a trustee having money in his hands misappropriates the funds, and afterwards purchases lands in his own name, it may be difficult to show that the land was purchased with the trust money; and, if the trust money or its proceeds cannot be traced into the lands, the cestui que trust cannot have a lien upon them."

Again, in 26 R. C. L. p. 1353, it is said:

"*Identification of Property.*—While the cestui que trust may follow a trust fund or property through any number of transmutations and into the hands of any person except a bona fide purchaser for a valuable consideration without notice, so long as he can clearly identify it, it is well settled that his right so to pursue it fails when the means of ascertaining its identity fail."

And again, in Pomeroy's Equity Jurisprudence, vol. 3, p. 2043, § 1058, the author says:

"No change in the form of the trust property, effected by the trustee, will impede the rights of the beneficial owner to reach it and to compel its transfer, provided it can be identified as a distinct fund, and is not so mingled up with other moneys or property that it can no longer be specifically separated. If the trust property has been transferred to a bona fide purchaser for value without notice, or has lost its identity, the beneficial owner must, and under other circumstances he may, resort to the personal liability of the wrongdoing trustee. The existence

of a constructive trust, so of a resulting one, must be proved by clear, unequivocal evidence."

The true rule of this state was thus announced by our Supreme Court in Continental Nat. Bank v. Weems, 69 Tex. 489, 6 S. W. 802, 5 Am. St. Rep. 85:

"Now then, the question is, has the appellant a lien upon the general assets in the hands of the receiver for the proceeds so appropriated? We think not. To hold the affirmative of this proposition would be to declare that every one who receives the money of another in a fiduciary capacity, and expends it in the payment of his own debts, thereby creates a lien upon his· entire estate in favor of the owner of the money so expended. But this is clearly contrary to the doctrine of constructive trusts. The true rule is that the trust estate must be clearly traced into other specific property, in order that the cestui que trust may claim either the property itself or a lien upon it. This is the doctrine uniformly applied in the older cases, and laid down by the text-books upon the law of trusts." '

In Blumenthal v. Nussbaum (Tex. Civ. App.) 195 S. W. 275, it is said:

"In such suits the general rule, as established by our state courts, is that the burden of proof to establish that any such trust funds were used in paying for such land is upon the plaintiff, pleading an equitable title, and that such proof must be clear and satisfactory, and must with a reasonable degree of certainty trace such trust funds, if any, into such payment. Joske v. Irvine, 91 Tex. at page 582, 44 S. W. 1059; King v. Gilleland, 60 Tex. 271; Goodrich v. Hicks, 19 Tex. Civ. App. 528, 48 S. W. 798; Albrecht v. Albrecht [Tex. Civ. App.] 35 S. W. 1076; 39 Cyc. 160, 166; Meyer v. Holle, 83 Tex. 623, 19 S. W. 154; Zundell v. Gess, 73 Tex. 144, 10 S. W. 693; Glasscock v. Hamilton, 62 Tex. 143; Wright v. Moline Plow Co., 40 Tex. Civ. App. 434, 90 S. W. 905; Texas Moline Plow Co. v. Imp. Co., 32 Tex. Civ. App. 343, 80 S. W. 1042."

Appellees seek to sustain the trial court's injunction by the following propositions, taken from their written argument. The numbering is ours:

(a) "In an action against a trustee to compel an accounting for money received, the burden is upon the trustee to make a proper and satisfactory accounting of the funds given into his hands." Trusts, 39 Cyc. p. 476.

(b) "It is well settled that, where a trustee mingles trust funds with his own property or so invests it in property together .with his own, the whole estate, funds, or 'property, becomes subject to the trust, and the duty rests upon the trustee, who has so mingled the trust funds with his own, in order to release his part from the trust, that is the burden upon the trustee to separate and distinguish his own from the balance of the property, and if he does'not do so, the whole of the property is subject to the trust." (They support this proposition by 39 Cyc. 538; Zundell v. Gess, 73 Tex. 146, 10 S. W. 693.)

(c) "Between the cestui que trustent and the trustee, where it is a simple question between them, and if the trustee is shown to have abstracted the money or assets and mixed them with his own, such moneys and assets, into whatever form they may be changed by exchange for other properties, are subject to the trust."

(d) "In all cases where from the pleaded and evidentiary facts before the court it appears that property is apparently or probably a trust fund, and that the person in possession of such property is endeavoring to claim the same as his own, and conceals the trust right to the property from the cestui que trust, an injunction should be granted to preserve the fund and secure it for the parties to whom it may belong upon the final decision." (This proposition they support by Driskill v. Boyd (Tex. Civ. App.) 181 S. W. 716.)

(e) "On an application for an injunction, if it should appear to the chancellor that the plaintiffs would likely be injured if the injunction was not granted, in that it appeared from the facts as pleaded and the evidence that they had a right to submit it to the court for recovery, it is not required that the plaintiff produce all of his evidence at the hearing for injunction, and establish absolutely his right for recovery; this is not the purpose of the hearing, as that is what the final trial is for. It only has to appear that the facts pleaded and the evidence adduced would apparently entitle the plaintiff to recover, and that he would suffer irreparable loss if the injunction was not granted."

In general terms, all of the appellees' propositions are sound, but they have no application to the facts of this case made by the evidence. Had the evidence shown abstractions, or had the evidence shown a wrongful use of the funds, even in good faith, or had the evidence shown that T. D. Brooks had taken the specific funds of the Brooks Supply Company and bought the specific property standing in his name or his wife's name therewith, or if the evidence raised such issues for the final determination by a jury, then appellees' propositions would be in point and the judgment should be sustained. But that is not the case before us. A careful audit of the books of the Brooks Supply Company by the auditor selected by appellees themselves showed only the overdraft of $42,000 discussed in our conclusions of fact. When this overdraft is carefully analyzed, it appears that T. D. Brooks was improperly charged therewith. He discharged all burdens resting upon·him when he submitted the books of the Brooks Supply Company for examination by the court, and these books showed no defalcation or abstraction. By so doing he made out a prima facie case of a faithful discharge of his duties as the managing head and director of the Brooks Supply Company, which was not refuted by appellees.

For the reasons indicated, the judgment of the trial court is reversed, and the injunction dissolved.